## New York Life Insurance Company v. Duff's Administrator.

(Decided March 13, 1925.)

### Appeal from Perry Circuit Court.

Insurance—Insurer Held Not Liable on Policy, Application for Reinstatement of which had only been Conditionally Accepted at Time of Insured's Death.—Where partial payment of overdue premium and note for balance tendered with application for reinstatement was accepted only on condition that insured was in good health, and where, on investigation, it was discovered that

insured had died five days after insurer's receipt of application, held, insurer was not liable.

WOOTTON, SMITH & WOOTTON, WM. MARSHALL BULLITT, LEO. T. WOLFORD and BRUCE, BULLITT & GORDON for appellant.

MILLER, WHEELER & CRAFT for appellee.

OPINION OF THE COURT BY DRURY, COMMSSIONER— Reversing.

The appellant seeks the reversal of a judgment for $1,000.00 recovered against it by the administrator of Simeon B. Duff. On May 28, 1915, the New York Life Insurance Company issued to Simeon B. Duff, of Boat, Kentucky, its $1,000.00 life insurance policy on his life, payable to his executors, administrators or assigns upon receipt at the home office of due proof of the assured's death during the continuance of the contract. The policy took effect as of May 20, 1915, the date of the application, and the first annual premium of $29.71 was paid thereon at that time. The policy provided:

"(1) That renewal premiums in the sum of $29.71 were payable annually in advance on the 20th day of May in each year during its continuance until premiums should have been paid for twenty full years, or until the prior death of the assured.

"(2) That the payment of a premium should not maintain the policy in force beyond the date when the next premium should be due except that a grace of one month should be allowed for the payment of any premium after the first.

"(3) That at any time after any default, upon written application by the insured and upon presentation at the home office of evidence of insurability satisfactory to the company, this policy may be reinstated together with any indebtedness in accordance with the loan provisions of the policy, upon payment of arrears of premiums with interest thereon at the rate of five per cent per annum."

There was no provision for any nonforfeiture benefits upon the lapse of the policy until after two annual premiums had been paid.

The second annual premium of $29.71 became due on May 20, 1916, and was not paid. On July 14, 1916, in accordance with the provision for reinstatement, the as-

sured made written application to have the policy reinstated, and in connection therewith he deposited with the company the sum of $8.71 in cash, together with 4 cents interest on his note, and executed and delivered to the company his note dated May 20, 1916, and due September 20, 1916, for the unpaid balance of the annual premium, to-wit, $21.00. This application for reinstatement was approved by the company.

When it became due on September 20, 1916, it was not paid. On September 27, the insured again made written application for the reinstatement of the policy, and he deposited with the company $4.00 in cash, totogether with the further sum of 35 cents, interest on the note, and he executed and delivered to the company another similar note for $17.00, dated September 20, 1916, and due November 20, 1916. This application for reinstatement was likewise approved by the company.

When the second note fell due it was not paid. Thereafter, on December 4, 1916, the insured, for the third time within the year, delivered to the company a similar written application, dated November 27, 1916, for the reinstatement of the policy, and in connection therewith on December 4, 1916, he deposited with the company the sum of $6.00 on the $17.00 unpaid portion of the annual premium and the further sum of 14c interest on the note, and executed and delivered to the company another similar note for $11.00 dated November 20, 1916, and due February 20, 1917.

The first two applications for reinstatement which were presented to the company on July 14 and September 27 were perfectly regular. The third application, presented December 4, 1916, differed from the other two in that although the applicant represented that he was in sound health, he also stated that he had been treated by Dr. H. P. Duff since the date of the policy. Since the prior applications did not refer to this treatment, it was apparent that Dr. Duff had treated the applicant since September 27, or during the preceding two months.

When this third application, showing the impairment of the risk, was received by the local office, it was forwarded to the home office for consideration and a receipt was issued to the applicant which very clearly specified that the cash and note were "deposited with said company, not as payment of premium either in whole or in part," but upon the special agreement "that evidence of insurability satisfactory to the company and

payment of all defaulted premiums are conditions precedent to reinstatement," and "that if the evidence of insurability is not satisfactory, this note shall be void and of no effect; and the company will, upon demand and surrender of the receipt given therefor, return said cash." The third application for reinstatement of the policy was received by the home office of the company on or about December 6, and it immediately began an investigation to learn the applicant's true condition of health, and instructed the Louisville office to get a more detailed statement in regard to the treatments, but pending this investigation, the applicant died on December 11, 1916.

The third application was never approved, as the company discovered the death of the insured while it was trying to get the information necessary to have in order to intelligently accept or reject the application for reinstatement. Each of the three notes which were given by the assured for the reinstatement of the policy contained the following special agreement:

"That the above numbered policy has lapsed for the nonpayment of premium due on May 20, 1916, and application is being made for its reinstatement; that evidence of insurability satisfactory to the company and payment of all defaulted premiums with interest are conditions precedent to reinstatement which cannot be waived. . . . That if the evidence of insurability is not satisfactory, this note shall be void and of no effect, and the company will, upon demand and surrender of the receipt given therefor, return said cash."

In each of the applications for reinstatement which were signed by the assured, it was agreed between him and the New York Life as follows:

"I further agree that said policy shall not be deemed reinstated by reason of any cash paid or settlement made in connection with this application or otherwise, unless and until said company, at its home office, in acting upon this application, shall have duly reinstated said policy during my lifetime and good health, notice of such reinstatement to be promptly mailed to me. If the company does not mail to me from its home office, within thirty days from this date, notice that said policy has been reinstated, then this application is to be considered de-

clined, and the company is, upon demand with surrender of the receipt given therefor, to return any payment made in connection with this application.''

By the plain, unambiguous terms of the contract, as expressed in the policy, the applications for reinstatement, the notes and the receipts given to the applicant, the policy was not in effect at the time of the insured's death.

This case cannot be distinguished from the case of Fidelity Mutual Life Insurance Company v. Price, 117 Ky. 25, 77 S. W. 384, 25 Ky. L. R. 1148. Promptness in the payment of premiums is essential to the life insurance business, and definite provisions to require prompt payment of premiums and premium notes are enforceable. The company was indulgent to the extreme. In less than seven months there were three defaults by the insured in the payment of his premium and premium notes.

The policy was not reinstated by the application filed with the company on December 4, 1916. By the plain terms of the policy, the application for reinstatement, the note and the receipt given therefor, the company was given the right to say whether or not it considered the applicant insurable before accepting the note. It was making an investigation to determine that very fact when the applicant died just five days after the company had received the application. No affirmative act was done by the company which could by any possibility amount to an acceptance of the application.

The judgment is reversed.