**Nora M. Froehler, Appellee, v. North American Life Insurance Company of Chicago, Appellant.**

**Gen. No. 38,941.**

Opinion filed March 24, 1937.    Rehearing denied April 12, 1937.

Thomas E. Rooney and Arthur C. Rooney, both of Chicago, for appellant; Ferdinand Goss, of Chicago, of counsel.

Stebbins, McKinley & Price, of Chicago, for appellee; William McKinley and Paul E. Price, of counsel.

Mr. Justice Hebel delivered the opinion of the court.

This is an appeal by the defendant insurance company from a judgment entered in favor of the plaintiff for $11,166.66, in an action commenced by the plaintiff, widow of D. Froehler, as beneficiary, to recover the proceeds of the policy of insurance for $10,000, issued by the North American Life Insurance Company of Chicago.    The case was tried before a jury, who returned a verdict and the court entered judgment for the amount from which this appeal is taken.

On April 1, 1932, Thomas D. Froehler, husband of the plaintiff, received a life insurance policy upon his application for $10,000 from the North American Life

Insurance Company of Chicago, and the company issued its receipt for $201.60, acknowledging payment of the first annual premium.

The second annual premium was due on April 1, 1933, and was not then paid, nor was it paid within the 30-day grace period. Consequently the policy lapsed on May 1, 1933.

From the statement of facts called to our attention by the defendant there appears to be a provision in the policy as follows:

"Reinstatement—This policy may be reinstated after default in payment of any premium upon evidence of insurability satisfactory to the company, subject to the payment of past due premiums, with interest at 6 per cent per annum thereon. . . ."

It further appears that on May 5, 1933, Mr. Froehler executed his application for reinstatement and forwarded the same by mail to the company, together with his check for $53.43 in payment of the first quarterly premium for the second year of the policy. There is some dispute as to whether the receipt was dated May 4, 1933 or May 5, 1933. In the application accompanying this check, Mr. Froehler answered in the affirmative the question as to whether he was in good health.

The provisions in the application for reinstatement are in part as follows:

"I hereby apply for reinstatement of the above mentioned policy which lapsed for non-payment of the premium due April 1, 1933, and which is not now in force except as provided by the non-forfeiture provisions of the policy. I agree that the declarations and answers herein contained shall be relied upon by the Company as the basis of the reinstatement herein applied for.

"I hereby agree that the reinstatement shall not take effect until this application shall be duly approved

by the Company at its Home Office and notice of such approval mailed to me at the address given above, and that any payment in advance on account of the premium shall be binding upon the Company only in accordance with the Company's receipt made up without alteration on the form detached from this application and that the policy if reinstated shall be non-contestable only after two years from the date of such reinstatement.''

The receipt for the $53.43, forwarded by Froehler with his application, was made out by the company's agent, detached from the application and delivered to Froehler. In this receipt it is provided—

''It is understood that this payment is in no way binding upon the said Company except that said Company agrees to return the amount received in case the Company declines to reinstate said policy.

''Note: If notice of approval is not received within thirty days, the amount tendered will be refunded by this Company on request.''

It is also a part of the facts that on May 19, 1933, two weeks after the date of application for reinstatement, the company mailed a letter to Mr. Froehler notifying him that said application was declined because the evidence of insurability was not satisfactory, and inclosed its check for $53.43, in refund of the amount forwarded with said application.

In the original application Mr. Froehler answered in the negative every question as to the existence of any physical ailment, including those as to the existence of any impairment of vision or hearing or diseases of the eye or ear.

In this application for reinstatement dated May 5, 1933, Mr. Froehler answered affirmatively the question: ''Are you now in good health?''

It also appears as a part of the facts that Mr. Froehler consulted Dr. Loyal Davis at his home one eve-

ning about a week or two before he went to the hospital. At that time he complained to Dr. Davis of headaches which were associated with vomiting on one or two occasions, difficulty of vision, and he stated he had suffered a progressive loss of vision for the past two years and that his left eye was then useless.

On May 17, 1933, Mr. Froehler went to the Passavant Hospital for observation for brain tumor, and died during the night of the day on which this letter was mailed, May 19, 1933, by which he was notified that said application was declined because the evidence of insurability was not satisfactory.

The defendant contends that the insured was not in good health at the time he executed the application for reinstatement, and the company therefore had the legal right under the terms of the insurance contract to reject the application for insurance. Further, that it is immaterial whether the insured had knowledge of his ill health, and points to the provision of the policy which provides for reinstatement after a default in the payment of any premium upon evidence of insurability satisfactory to the company.

The plaintiff's reply to this contention is that when the insured in an application for reinstatement makes an affirmative answer to a question contained in the application as to his good health, the answer, if made in good faith without knowledge of any latent or unknown disease, is in full compliance with the terms and conditions of the policy, and the company cannot reject the application because at a later date it is discovered that a latent or unknown condition existed impairing the health of the insured.

The issue is narrowed to (1) was the answer upon the question of the good health made in good faith by the applicant for reinstatement; and (2) can the defendant reject the reinstatement application after de-

fault by reason of subsequent discovery of an unknown condition impairing the health of the applicant?

It must be borne in mind that upon a default the insurance policy has lapsed because of such default and remains so until the application for reinstatement has been filed and approved by the company, and until the proposal for reinstatement of insurance is accepted by the defendant company, the minds of the parties to the contract do not meet. Until that is done, the contract of insurance is not in force. *Budnik v. Metropolitan Life Ins. Co.,* 177 Ill. App. 14; *New York Life Ins. Co. v. Duff's Adm'r,* 207 Ky. 800, 270 S. W. 51; *Burchfield v. Home Benefit Ass'n* (Tex. Civ. App.), 73 S. W. (2d) 559; *Broughton v. Equitable Life Ass'n Soc. of United States,* 71 F. (2d) 821.

The question of good faith of the applicant is involved when he answers that he is in good health in his written request for reinstatement.

The facts are, and it is necessary in a measure to recite some of the facts that appear in the statement herein, the application is dated May 5, 1933; the applicant died on May 19, 1933, as the result of an operation for the removal of a tumor on the brain; that prior to the applicant's death he visited Dr. Loyal Davis a week or two prior to the operation performed by this doctor in the Passavant Hospital in Chicago. At that time he complained to the doctor of headaches, associated with vomiting on one or two occasions, difficulty of vision, and further stated that he had suffered a progressive loss of vision for a period of two years, and at the time of the visit to this doctor his left eye was useless.

It is clear that during the consideration of the application of Mr. Froehler for reinstatement he, Froehler, consulted with Dr. Davis regarding his condition of health, and at the request of his doctor he became a patient in the Passavant Hospital, where an

operation for and removal of a brain tumor was had and he died on May 19, 1933.

This proof does show that while Mr. Froehler's application was being considered he had knowledge that he was not in good health and this fact was not disclosed to the defendant company.

The fact that the jury passed upon the question will not control where the manifest weight of the evidence is contrary to their finding. Of course if the truth had been disclosed pending the application for reinstatement, the company would not have been unreasonable in refusing to reinstate this policy, for the reason that the applicant was not an insurable risk.

Now then, can the company upon further ground take advantage of a subsequent change in the health condition of the insured after the issuance of the policy and a default in premium?

The plaintiff's position is that the right of the insured in making application for reinstatement of a lapsed policy is based upon the contractual relation between the parties, and the insured is entitled to enjoy a right guaranteed to him by the statute as well as by his contract of insurance.

This is undoubtedly true as a general proposition, but the real question in this case is: "Did the company bind itself by this contract, when the applicant filed his petition for reinstatement and answered among other questions that he was in good health, to reinstate the insurance policy?" Undoubtedly not, for this insurance contract is subject to the provision of the contract that the applicant is an insurable risk satisfactory to the company. This fact must be decided by the company, and until such action is taken, the company has not assumed the risk, and this is further fortified and controlled by the application for reinstatement, wherein it is provided in this language:

"I hereby agree that the reinstatement shall not take effect until this application shall be duly approved

by the Company at its Home Office and notice of such approval mailed to me at the address given above and that any payment in advance on account of the premium shall be binding upon the Company only in accordance with the Company's receipt made up without alteration on the form detached from this application and that the policy if reinstated shall be noncontestable only after two years from the date of such reinstatement.''

The plaintiff has called to our attention a number of decisions on like questions, which we have examined, and the question in each case is largely one dependent upon the terms of the insurance contract itself. The case of *Crawford v. Lincoln Life Ins. Co.*, 278 Ill. App. 576, has been called to our attention as having a bearing upon the question of the changed condition of health of the insured after the application has been received and the policy issued. This court has examined the opinion in that case, and as we view the facts, as well as the opinion itself, we are unable to see where it has any particular bearing upon the question involved in the instant case. It is apparent that the applicant knew of his condition when he visited the doctor and consulted with him regarding his condition of health. This conclusion is supported by the facts referred to in the opinion, and when we consider this progressive loss of sight, there is only one decision we are obliged to make upon the record before this court, and that is that applicant's condition was such that he was not an insurable risk at the time he made application for reinstatement. *West & Southern Life Ins. Co. v. Tomasun*, 358 Ill. 496.

Upon the question of delay by the defendant company in approving or rejecting the application, whether it was signed on the 4th or the 5th of May, 1933, it was forwarded to the company and thereafter on the 19th day of the same month was refused by letter

mailed to the insured. From all the facts as they appear in the record it does not appear to the court that the action of the insurance company was unreasonable. There is nothing which would indicate an unjustified delay in reaching a conclusion upon the application of the insured.

Other questions have been called to our attention, but in view of our conclusions, it will not be necessary to discuss them.

We believe it will be necessary for this case to be retried, and further comment is not necessary. Such comment as we have made is only for the purpose of passing upon the questions which are before this court upon the record as here presented.

For the reasons stated the judgment of the circuit court is reversed and the cause is remanded.

*Reversed and remanded.*

DENIS E. SULLIVAN, P. J., and HALL, J., concur.