Barbara Gerrib, Appellee, v. Northwestern Mutual Life Insurance Company, Appellant.

Gen. No. 8,341.

Opinion filed February 3, 1930. Rehearing denied April 4, 1930.

GUNN, PENWELL & LINDLEY, for appellant; GEORGE LINES and HERBERT N. LAFLIN, of counsel.

GRAHAM & DYSERT and ACTON, ACTON & SNYDER, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This suit is brought by appellee against appellant to recover upon a contract for insurance made by the husband of appellee, and upon his death claimed by appellee to be a binding contract for indemnity.

The court below sustained a demurrer to defendant's pleas to the declaration in assumpsit, and defendant, having elected to stand by its pleas, the court

rendered judgment *nil dicit* against the defendant and assessed the plaintiff's damages at $5,000 and costs. It is from that judgment that this appeal is prosecuted.

For convenience, we shall refer to the parties as they were below, namely, Barbara Gerrib as plaintiff, and the Northwestern Mutual Life Insurance Company, a corporation, as defendant.

The declaration is in assumpsit and consists of one count. It avers that on April 25, 1928, the defendant, for a valuable consideration, executed and delivered to Walter Gerrib a certain instrument in writing, which is set out *in haec verba* as follows:

"No other form of receipt for advance payment of premium will be recognized by the Company.

"Received of Walter Gerrib the sum of three hundred nine and 70-100 dollars as the first annual premium for $10,000.00 insurance on his life on the ordinary life plan, for which application has been made to The Northwestern Mutual Life Insurance Company, such premium being paid in accordance with the conditions of agreements (1) and (2) contained in said application (copy of agreement on back hereof).

"Westville, Ill., 4-25-1928.

"Place and date.

JOHN F. HAWORTH, Agent.

(On side of above.)

No. 715256 E

"If the premium is paid at the time of application this receipt must be completed and given to the applicant; if it is not so paid the receipt must not be detached."

(On back.)

Copy of Agreement Contained in Application.

"It is agreed (1) that if the premium for the insurance hereby applied for is paid to the agent at the time of making this application the attached receipt

form, duly executed, to be the only evidence of such payment, and if the Company shall be satisfied that the applicant was, according to the rules and standards of the Company, an acceptable risk for the amount of insurance and upon the plan hereby applied for on the date hereof, or on the date of the medical examination therefor, whichever is later, the insurance shall be effective in accordance with the provisions of the policy applied for from the date hereof, or from the date of the medical examination, whichever is later, and such policy shall be issued and delivered to the applicant, or his legal representative, the Company having until the delivery of said policy to consider the question of such acceptability; and (2) that if the Company shall reject this application, the amount paid as premium shall be returned, and that the failure of the Company to deliver a policy as applied for within sixty (60) days after the date hereof may at the option of the applicant be deemed a rejection of this application; and (3) that if the premium for the insurance hereby applied for is not paid to the agent at the time of making this application, no insurance shall be effected and no liability shall exist unless and until a policy as applied for is issued and delivered to the applicant and the first premium thereon actually paid during his lifetime.''

The declaration then avers that the foregoing document constitutes a contract for temporary insurance; that applicant underwent medical examination and was an acceptable risk; that applicant paid the premium of $309.70; that by reason of the terms of the foregoing instrument, the insurance therein applied for became effective from the date of the medical examination; that applicant died and notice of death was given to defendant.

The defendant filed a general demurrer to this declaration which was by the court overruled and proper exceptions of defendant preserved.

Thereafter, defendant filed seven special pleas, as follows:

The first plea avers that the defendant did not, at any time, issue a policy of insurance on the life of Walter Gerrib.

The second plea avers: (1) That on April 25, 1928, Walter Gerrib made application in writing for insurance upon his life to defendant, which said application contained certain agreements set out *in haec verba,* identical with the agreements set forth in the declaration.

(2) That the defendant was not satisfied that said applicant was, according to the rules and standards of the defendant, an acceptable risk for the amount of insurance and upon the plan applied for by the said Walter Gerrib on the date of said application, or on the date of the medical examination.

(3) That no policy on the life of said Walter Gerrib was issued or delivered to the said Walter Gerrib or his legal representative.

The third plea has the same averment as one, two and three of the second plea, and in addition avers: (4) That within six days after the signing of the said application by said Walter Gerrib, defendant returned to said Walter Gerrib the amount paid as premium by him, to wit: the sum of $309.70.

The fourth plea has the same averments as one, two and three of the second plea and then avers: (4) That said applicant, Walter Gerrib, became insane and afflicted with acute mania on April 27, 1928, and was, on April 29, 1928, by action of the county court of Vermilion county, adjudged an insane person and committed to the Eastern Illinois Hospital for Insane at Kankakee, Illinois.

(5) That no conservator was appointed for the said Walter Gerrib, an insane person, at any time during his lifetime.

(6) That defendant, not being satisfied that the applicant was an acceptable risk for the amount of insurance and upon the plan applied for, attempted to return to said applicant the amount of the premium paid by him; that said Walter Gerrib, being an insane person, defendant was unable to return the amount of said premium to him; that there was no conservator appointed for said Gerrib to whom said premium could be returned; that defendant returned to said applicant the said sum of $309.70, being the amount of the premium paid by him, by causing the same to be deposited in the general banking account of the said Walter Gerrib in the First National Bank of Westville, Illinois, on May 1, 1928, which bank account had been maintained by said applicant in said bank for a long space of time, to wit: two years immediately prior thereto.

(7) That plaintiff was thereafter and during the lifetime of said Walter Gerrib notified that the amount of said premium had been credited to his account in said bank.

(8) That plaintiff is the duly appointed, qualified and acting administratrix of the estate of Walter Gerrib.

(9) That said sum of money, to wit, $309.70, is still standing on deposit in said bank to the credit of the said Walter Gerrib, and that title to said money is vested in the plaintiff as administratrix of the estate of said Walter Gerrib, deceased.

(10) That said plaintiff, as such administratrix, has been notified by defendant that said sum of money is so on deposit and that plaintiff, as such administratrix, has the exclusive right and authority to withdraw said money from said bank.

The fifth plea has the same averments as one, two and three of the second plea, and then avers: (4) That in said application so executed by the said Walter Gerrib the said applicant in reply to the following

question: "Do you make or contemplate making aerial flights? If so, give particulars," answered, "May make airplane flights while in Europe in connection with taking moving pictures."

(5) That according to the rules and standards of defendant, one who might make airplane flights in connection with taking moving pictures was not an acceptable risk for insurance on the date of said application.

(6) That by reason of said answer regarding airplane flights this defendant was not satisfied that the applicant was, according to the rules and standards of the defendant, an acceptable risk for the amount of insurance and upon the plan applied for, and that no policy of insurance was issued and delivered to the applicant or his legal representative.

Then follow averments the same as four to ten inclusive of the fourth plea.

The sixth plea has the same averments as one, two and three of the second plea and then avers: (4) That the application executed by the said Walter Gerrib required him to state his actual weight in ordinary clothing without overcoat and provided that if the weight approximated the maximum or minimum, the examiner must weigh the insured, to which question the applicant answered and gave his weight as 215 pounds; that the application showed that the medical examiner did not weigh the applicant.

(5) That the weight of the said Walter Gerrib approximated the maximum weight according to the rules and standards of defendant.

(6) That the application showed that the applicant approximated the maximum weight and showed that the applicant had not been actually weighed by the medical examiner in accordance with the rules and standards of the company, and that the application, with such answer, did not show and the defendant was

not satisfied that the applicant was, according to its rules and standards, an acceptable risk.

This plea then has the same averments as four to ten inclusive of the fourth plea, with the additional averment that the defendant died while an inmate of the Eastern Illinois Hospital for Insane on May 3, 1928.

The seventh plea avers that the defendant did not, at any time, contract or agree to insure the life of the said Walter Gerrib.

The plaintiff filed general and special demurrers to defendant's pleas, which were sustained by the court. The defendant elected to stand by its pleas.

The facts, in brief, as shown by the pleadings, are: that on April 25, 1928, Walter Gerrib, of Westville, Illinois, made a written application to defendant for insurance on his life in the sum of $10,000, paid the first annual premium of $309.70, and was given a written receipt, which made a part thereof of certain agreements, the said receipt and agreement being set forth in full in the declaration. On the same day the applicant for insurance underwent a medical examination.

The defendant pleads that it was not at any time satisfied that the applicant was, according to the rules and standards of the defendant, an acceptable risk for the amount of insurance and upon the plan applied for by said applicant, and no contract or policy of insurance was ever issued or delivered to said applicant or his legal representative, but the defendant within six days after the signing of the application returned to the applicant the amount of the premium paid by him when he signed the application. The premium was returned May 1, 1928, and Walter Gerrib died on May 3, 1928. This suit is based upon the receipt given applicant on the theory that it is a contract of insurance.

On April 27, 1928, two days after signing the application for insurance, the applicant became insane and was afflicted with acute mania. On April 29, 1928, the said applicant was, by the county court of Vermilion county, adjudged an insane person and committed to the Eastern Illinois Hospital for Insane at Kankakee, Illinois. No conservator was appointed for said applicant during his lifetime.

In answer to a question contained in the application for insurance, signed by him, the said Walter Gerrib stated in writing: "May make airplane flights while in Europe in connection with taking moving pictures." According to the rules and standards of defendant, one who might make airplane flights in connection with taking moving pictures was not an acceptable risk for insurance on the date of said application.

The application also disclosed that the applicant weighed 215 pounds, which approximated the maximum weight acceptable for insurance, and when one so approximated the maximum weight the application required the medical examiner actually to weigh the applicant and so to certify. This application showed that the medical examiner had not actually weighed the applicant, and, under such circumstances, the applicant was not an acceptable risk for insurance.

The defendant, having determined that the applicant was not, according to the rules and standards of the defendant, an acceptable risk for the amount of insurance and upon the plan applied for by said applicant, attempted, on May 1, 1928, to return to him the premium which he had paid when the application was signed.

At that time the applicant was confined in the Eastern Illinois Hospital for Insane, having become insane on April 27, 1928, and committed to that institution on April 29, 1928. The premium, therefore, could not be returned to the applicant, as there was no conservator appointed for him. Therefore the defendant, on

May 1, 1928, caused the amount of said premium to be deposited in the general bank account of the applicant in the First National Bank of Westville, Illinois, an account which the applicant had maintained at said bank for a long space of time prior thereto, and notified the plaintiff, who was the wife of applicant, one of the proposed beneficiaries named in the application, that the amount of the premium had been so credited to her husband's account in said bank.

Thereafter, on May 3, 1928, the applicant died. Plaintiff was appointed and is still acting as administratrix of his estate and, as such administratrix, was notified that the amount of the premium, $309.70, was standing to the credit of said deceased in said bank account, title thereto being vested in the plaintiff, as such administratrix, with the exclusive right in her to withdraw said money.

A great many cases have been cited in the briefs of each party, many of which construe contracts with varying phraseology and few of the cases cited have a direct bearing upon this case. The one question in the case is, whether the receipt and contract contained in the application and declaration constitute a present contract and agreement or in any manner became effective before the defendant passed upon the application, and whether the declaration will support the judgment. The plaintiff, by every case that could be found approaching the nature of this case and by similar cases, has persuasively argued that the contract and receipt should be given the effect of a binding agreement, and bases her argument upon two cases: *Reynolds v. Northwestern Mut. Life Ins. Co.*, 89 Iowa 76, 176 N. W. 207, and *Stanton v. Equitable Life Assur. Soc.*, 137 S. C. 396, 135 S. E. 367.

In the *Reynolds* case the application contained the following clause:

"If the amount of such premium is paid to the said company's agent at the time of making this applica-

tion, the insurance (subject to the provisions of the company's regular form of policy for the plan applied for) shall be effective from the date of my medical examination therefor, and such a policy shall be issued and delivered to me or my legal representatives, provided the said company in its judgment shall be satisfied as to my insurability on the plan applied for, on the date of such medical examination.''

In that case the applicant signed a written application which, for all material purposes, is identical with the one signed by Gerrib in the case at bar.

The applicant there paid the premium and the application, premium and medical examiner's report were forwarded to the home office. These were received December 7.

On the morning of December 8 the applicant died from heart disease. Thereafter, the application was rejected upon the ground that applicant was not insurable on the date of the medical examination and premium returned to the widow.

The court holds that the evidence shows that the applicant was not in such physical condition as to be entitled to the insurance on the date of the application and medical examination and that no liability existed upon the defendant.

The court does use language in its opinion indicating that a temporary contract of insurance was effected by the application and receipt, but defendant insists that the language was entirely *obiter dictum* and not in any way necessary for decision in the case. The decision of the court would appear to be contrary to its *obiter dictum*.

In the *Stanton* case in October, 1917, one Stanton applied to the defendant company for a policy of life insurance and paid his premium. Stanton was in good health and his physical condition was excellent, but his application showed that he had been addicted to an excessive use of intoxicating liquors. In reply to the

application, the company wrote that it was unwilling to issue a policy to Mr. Stanton at that time, but that, after the lapse of one year, they would be pleased to give the case further consideration. At the lapse of the year, in October, 1918, the home office of the company in New York wrote its general office in Rockhill, South Carolina, to open negotiations with Mr. Stanton. The general agents did so, and Stanton signed another application and again paid his premium by check. The second application was refused. Mr. Stanton took the flu and died before he heard from his application, which had been marked "refused" before his death by the insurance company, but was delayed in transit and never reached him.

The court places its decision squarely on the ground that the company, knowing all the facts, induced the applicant to apply for insurance, took his money and gave him a receipt declaring the applicant insured from the date of the receipt, subject to the terms and conditions of the company.

The court said:

"The undisputed facts show that in 1917 a full investigation was made and all the facts were known. With full knowledge of the facts up to that time, the application was not refused as claimed by the appellant, but merely postponed for a year. With full knowledge of the facts, the insurance agent offered to take up the application in 1918. This was at the suggestion of the home office. This offer was on condition, of course. The company has not attempted to show a failure to comply with the conditions . . . . There was not a word of testimony that the deceased had taken a single drink of intoxicant since his previous application in 1917. There was evidence that the applicant had not taken a drink of intoxicants since 1917. Knowing all of the facts, the company induced him to apply in 1918, took his money, gave him a receipt declaring the appli-

cant insured from the date of the receipt, subject to the terms and conditions of the company.''

The court here based its decision upon an element not present in the case at bar. It is also interesting to note that the *Stanton* case was decided by a three-to-two decision and the two dissenting judges filed opinion.

In the *Stanton* case the court approved of an instruction in the following language:

''That under the terms of this receipt, the defendant insurance company was also irrevocably bound to give Stanton insurance under the conditions named in the receipt.''

The court, in commenting upon this instruction, said:

''His honor did not charge the jury that the company was bound absolutely to give insurance, but that, if Mr. Stanton conformed to the rules of the company on the day the receipt was given, he was entitled to insurance,'' and that the application and the receipt made the contract between the parties, and if the applicant was bound to take the policy, so the company was bound to give the policy, if the applicant measured up to the standard.

There is still in the agreement in the application of the deceased in the case at bar the following language:

''And if the company shall be satisfied that the applicant was, according to the rules and standards of the company, an acceptable risk for the amount of insurance and upon the plan hereby applied for on the date hereof,'' etc.

To determine the acceptability of the applicant, the company is not confined to the application itself, but may investigate the applicant in every manner, and we believe that has been the holding in a very great majority of the cases. In *Northwestern Mut. Life*

*Ins. Co. v. Neafus,* 145 Ky. 563, 140 S. W. 1026, Neafus applied to the defendant company for a policy of insurance upon his life, giving a note to the agent for the first premium and was given a receipt reading: "Application for a $1,000 policy having been made by T. J. Neafus to the Northwestern Mutual Life Insurance Company, there has been collected the sum of $27.71 to be considered the first annual premium on said policy; provided the application is approved by the company at its home office; and, in that event, the insurance as applied for will be in force from the date of the medical examination; if the application is not so approved, the sum collected will be returned."

The application was signed by Neafus and was made upon the usual printed form, which, among other things, provided, "I agree . . . that if the amount of said premium is paid at the date of making this application, the receipt for the advancement of premium given me, if on the form now attached hereto, shall determine the conditions upon which and the time when the insurance applied for is to take effect."

On the same day the applicant was examined by the medical examiner. Neafus died suddenly on September 5, 1908, before either the application or the medical report had been forwarded to the company. The company declined to pay, on the ground that the application had not been accepted during the life of the applicant. Neafus was not an acceptable risk and the examining doctor suggested that he submit to another examination, in the hope that it would be more favorable, in which event the examining doctor could make a more favorable report to the company. To this Neafus agreed, but died before he could come in again.

The court, in its opinion, said:

"There is nothing unfair, unreasonable or oppressive in the conditions of this receipt. It is simply a proposition made by the company to the applicant. It, in substance, tells him that if he wants insurance he

can pay the first premium, submit to a medical examination, and then, if the company regards him as a desirable risk, it will issue to him a policy that will relate back to and be in effect from the date of the medical examination. When the applicant accepts this proposal, he agrees to its terms and conditions, and cannot be excused from knowing when his insurance will begin. If we should say that under the receipt the applicant was insured from the date of his medical examination, although the company might reject the application, we would be putting the company in the attitude of insuring a person whether he was a desirable risk or not. It would place upon it the burden of carrying without its consent a risk that it did not and would not assume.''

The court held that the insurance was not in force from the date of the medical examination and as the application was not approved by the company, there had never been a contract of insurance and said that the jury should have been instructed to return a verdict for the insurance company.

Another case involving the same company as the appellant herein is *Wheelock v. Clark,* 21 Wyo. 300, 131 Pac. 35.

On November 10, 1909, Clark signed an application for insurance on his life and paid the first annual premium, being a promissory note, and received a receipt reading, ''An application for a $10,000 policy having been made by Wm. Scott Clark to the Northwestern Mutual Life Insurance Company, there has been collected of him $401.70, to be considered the first annual premium on said policy, provided the application is approved by the company at its home office, and in that event the insurance as applied for will be in force from the date of the medical examination. If the application is not approved, the sum collected will be returned.''

On the same day applicant was examined by the company's local medical examiner and the application, medical examiner's report and the note, in payment of the premium were forwarded to the home office of the company at Milwaukee, Wisconsin, where they were received November 15.

On November 16 Clark telegraphed the company that he could not accept the policy and wrote a letter the same day confirming his telegram, and asking that his application be canceled and his note returned. The company took the matter up with their agent, who asked them to issue the policy as applied for. On November 23 the application was approved and on November 26 a policy was issued dated November 10, and forwarded to Clark, who refused to accept it and returned it to the company. The agent to whose order the note was payable instituted suit on the promissory note given by the applicant.

The court said:

"We have no hesitancy in holding that no contract of insurance was entered into between Clark and the company. His application was a mere proposal to enter into a contract and until accepted by the company no contractual relations existed between them and until such acceptance he had a perfect right to withdraw his proposal."

Appellee cited *Kempf v. Equitable Life Ins. Co.* (Mo. App.), 184 S. W. 133, but upon appeal to the Supreme Court of Missouri—*State ex rel. Equitable Life Assur. Soc. v. Robertson* (Mo.), 191 S. W. 989, the court held:

"Upon the facts stated, the Court of Appeals held they constituted a contract of insurance between Kempf and the company; we are of a contrary opinion, and held that there was no contract of insurance existing between them. Under this state of the facts, the opinion and judgment of the Court of Appeals

are in direct conflict with the last decisions of this court, as shown by the cases cited. For the reason stated, the judgment of the Court of Appeals is quashed and for naught held.''

In a recent Wyoming case, *Raymond v. National Life Ins. Co.*, 273 Pac. 667, the application embodied certain agreements similar to the one at bar, as follows:

''It is understood and agreed . . . (2) that if the amount of such premium is paid to the agent at the time of making this application, the company shall consider and act upon said application in accordance with its rules and practice of selection; that if it is satisfied that I was at the time of my medical examination insurable upon the plan and for the amount of insurance hereby applied for this application shall be approved and the insurance shall be effective in accordance with the terms of the policy applied for from the date of said medical examination, notwithstanding the provisions of the policy as to the delivery, in my lifetime, and good health, which provisions, in event of, and in consideration of said advance payment, are hereby waived, and such policy will be delivered to me or to my personal representatives, but the company may at any time before delivery of said policy, on receipt of additional information, reconsider any approval hereof, and decline the insurance if it is not then satisfied that I was insurable on the date of said medical examination, and that if said company shall not be so satisfied, the amount of the premium paid shall be returned.''

The court cites a large number of cases on the subject and then says:

''The application of Raymond was merely an offer, a proposal on his part for insurance upon certain terms, at the same time advising the insurance company that, before it decided to finally accept his pro-

posal, it might make certain additional investigations to satisfy itself of his being insurable at the time his medical examination took place. His insurance was to be effective from that date, in the event such final acceptance occurred. It is plain that life insurance is a contract. The meeting of the minds of the parties is vital to the execution of a policy. Honest, trustworthy underwriting demands careful inquiry into the moral character, habits, family history, financial standing and physical condition of an applicant for life insurance. . . . As we read the terms of clause two (quoted above), appearing in both the application and on the premium receipt in the case at bar, as already intimated, the risk was to take effect on the date of the medical examination, if the company finally accepted Raymond's application after such an additional investigation—reasonably and in good faith made—as satisfied the company concerning his insurability on that date. When that was done the insurer was willing that the risk should so commence, although the execution of the policy, embodying all the terms of the contract, might be delayed for a considerable period. Any other construction of the clause would, we think, impose upon the company heavy liabilities for a temporary insurance before the chief medical officers of the company had any time or opportunity to examine and approve risks, and before any thorough and careful independent investigation thereof could possibly be made. . . . Our conclusion upon this branch of this case is, therefore, that no contract of insurance was completed between the parties and this result is in entire harmony with the authorities herein cited presenting somewhat similar situations and with whose reasoning we are in accord.''

In the opinion of this court the provisions in the application quoted have no other or further meaning than that, in case the defendant shall be satisfied that the applicant is an acceptable risk and approve the

application, then the contract shall be considered as having become effective on the date of the medical examination, and until the application is approved the applicant may withdraw the application and demand the return of the premium, as the application is a mere offer to accept insurance and the weight of authority in the various States confirms us in this opinion.

Accordingly, the judgment of the circuit court of Vermilion county is reversed, with a finding of fact.

*Reversed with a finding of fact.*

We find as a fact to be incorporated as a part of the judgment in this cause, that there was no contract of insurance between Walter Gerrib and the defendant company.