(No. 25378.—)
NORA M. FROEHLER, Appellant, *vs.* THE NORTH AMERICAN LIFE INSURANCE COMPANY OF CHICAGO, Appellee.

*Opinion filed April 10, 1940—Rehearing denied June 12, 1940.*

18

Wilson, C.J., and Gunn, J., dissenting.
Stone, J., specially concurring.

Warren H. Orr, and McKinley, Price & Quindry, (William McKinley, and Paul E. Price, of counsel,) for appellant.

Arthur C. Rooney, and Lord, Bissell & Kadyk, (Ferdinand Goss, and David J. Kadyk, of counsel,) for appellee.

Mr. Justice Shaw delivered the opinion of the court:

Thomas D. Froehler, deceased, was the insured under a policy issued by the North American Life Insurance Company of Chicago (hereinafter called the company) and the appellant, his widow, was the beneficiary named therein. The policy was in the sum of $10,000 and was what is known as an ordinary life form of contract. The present appeal from the Appellate Court is on leave granted by us, and the judgment of that court was one affirming a judgment of the circuit court of Cook county. In the

circuit court the appellant had a jury verdict in the sum of $12,479.79, but this was set aside on motion for judgment *non obstante veredicto* and judgment rendered for the defendant. The case has been tried before two juries with the same result, and has been twice passed upon by the Appellate Court. 289 Ill. App. 402, and 300 id. 611.

On May 1, 1933, the policy in question, in accordance with its terms, lapsed for non-payment of a premium due. It contained, however, the following provision: "This policy may be reinstated after default in payment of any premium upon evidence of insurability satisfactory to the company, subject to payment of past due premiums, with interest at 6% per annum thereon," etc. Three or four days after this lapse, under date of May 4, 1933, Froehler made application for reinstatement and paid the past-due premium, which application for reinstatement was admittedly received by the company on May 6, 1933. In this application he answered in the affirmative a question as to whether or not he was then in good health. All of the questions were answered in an obviously favorable manner, but neither then, nor at any later time, did the company demand or request any medical examination nor any other proof of insurability. This application for reinstatement carried a footnote to the effect that if notice of approval should not be received within thirty days the amount tendered would be refunded by the company on request, but since this was no part of the insurance contract, it requires no particular consideration.

About a week or so after this application for reinstatement was signed, the insured called on Dr. Loyal Davis, a Chicago doctor (who testified he specialized in neurological surgery) complaining of headaches, some weakness, some difficulty with his vision and the history of occasional nausea. The doctor did not examine him at that time, but requested him to come to Passavant Hospital for further examination. The date of his first call on the doctor is not at all clear from the record, but might have been any time from the

twelfth to the fifteenth of May. It is clear that on May 17 he went to the hospital, that he received a diagnosis of brain tumor, was operated on May 19 and died on the same date. It is also clear from the testimony offered on behalf of the company, that on the very day of the operation one of its agents heard about the operation and upon that date sent a notice addressed to the insured (at a wrong address) advising that his policy would not be reinstated because "evidence of insurability is not satisfactory to the company." The agent testified, however, that the application was disapproved because he learned over the telephone May 19, 1933, that the insured was in a hospital being operated on for brain tumor.

On the motion for judgment *non obstante veredicto* the question of law to be determined by the court was whether or not there was any evidence, taken in its aspect most favorable to the plaintiff, to sustain the cause of action. Inasmuch as there is no important conflict in the testimony, whether the matter is taken in its most favorable aspect for either party is of little importance in this particular case. Two juries have arrived at the same result and we will simply state what the evidence fairly tended to prove. It is clear from the medical evidence offered by both parties that a brain tumor develops insidiously; that its early symptoms are not alarming and give the victim no prior warning of what may be and frequently is a deadly disease. As one of the experts put it: "A person might be seriously ill from many causes and not know it for a long time. Brain tumors and pituitary tumors often develop without a person knowing they are developing in the beginning. * * * There are many pathological conditions which take a long time to form but will not manifest themselves except very suddenly. A great many people are working today who are very ill in certain ways." The medical evidence indicates that the earliest symptoms of brain tumor might readily be attributed to other causes, such as impairment of vision,

occasional headaches and other trivial symptoms, but that when it finally discloses itself the terminal consequences are swift. So in this case, the record fairly tends to show that until the very day he went to the hospital, May 17, 1933, the insured continued to work at his usual occupation as a broker and had no information of nor reason to suspect the serious nature of his malady.

The record further shows that the insured's application for reinstatement was received by the company on May 6, 1933, that it was returned for a correction as to changing the payments from annually to quarterly and was again received by the company on May 10. Cross-examination of the agent for the company, who was in charge of these matters, indicates that the handling of a case of this kind was purely routine and there is a total lack of any explanation of why the matter was delayed until the day of the decedent's death.

It is necessary that we take notice of the theory upon which this case has twice been tried in the circuit court and this is best illustrated by the instructions given to the jury at defendant's request. It is unnecessary that we pass upon the correctness of these instructions, either singly or in series, and they are mentioned only for the purpose above indicated. At defendant's request the court instructed the jury: That the burden of proof was upon the plaintiff; that if the insured knowingly made a false or untrue statement for the purpose of inducing the company to enter into the original contract of insurance it became voidable; that the words "good health" meant a reasonably good state of health; that the burden was on the plaintiff to prove that the deceased complied with the requirements of reinstatement; that if the defendant, with good reason, rejected the application for reinstatement, within a reasonable length of time, the jury should find for the defendant; that if the insured knowingly misrepresented his physical condition by stating in the application for reinstatement that he was

then in good health, it should find for the defendant; that the application for reinstatement was of no avail until the company had had a reasonable opportunity to pass thereon; that if any of the statements in the application for reinstatement were false and material to the risk and that the applicant knew they were false or should have known it, it should find for the defendant; that it was the duty of the insured to disclose to the company any material changes in his health while the company was considering his application for reinstatement; that it was immaterial whether the assured actually had knowledge at the time of his application, if he was in ill health from a tumor while the defendant was considering his application, and that the defendant had a right to refuse to reinstate the policy, and if the jury should further find that the defendant did so refuse within a reasonable length of time, the finding should be for the defendant. The jury was further instructed at the defendant's request that it was immaterial whether the insured actually had knowledge of his ill health at the time he signed the application for reinstatement if he was then actually in ill health and that the defendant refused to reinstate the policy within a reasonable length of time, and that in such a case the jury should find the issues for the defendant.

The substance of these instructions clearly indicates the defendant's theory of the case and the issues of fact upon which it was tried. Those issues were, first, whether the insured acted in good faith when he stated in his application for reinstatement that he was in good health, and, second, whether the company acted with reasonable celerity in passing upon that application. Each of these questions of fact has been passed upon by two juries favorably to the beneficiary and adversely to the company.

The company's principal reliance is on *Western and Southern Life Ins. Co.* v. *Tomasun*, 358 Ill. 496, wherein certain language is said to apply to the case now before us. The cases are far different on their facts because that one

involved an absolute and intentional fraud. They are still further apart as a matter of law because, in that case, no contract ever existed between the parties, whereas, in this case, we are dealing with a question of performance of an existing contract.

In the case which we are now considering the insured had a contractual right to be reinstated and this provision of his policy was as valid and binding as any other provision therein. Under such a policy as this one the lapse for non-payment of premiums does not make necessary the formation of a new contract, but the reinstatement, when effected, merely cancels the forfeiture, leaving the original contract in full force. (*Monahan* v. *Fidelity Mutual Life Ins. Co.* 242 Ill. 488; 4 Cooley on Insurance, (2d ed.) p. 3800.) The truth or falsity of the statements as to health are to be determined as of the date the certificate is made. (*Insurance Co.* v. *Higginbotham,* 95 U. S. 380.) A recital in the certificate for reinstatement that the insured is in good health cannot be construed to mean that he has had no temporary or trivial indisposition. 4 Cooley on Insurance (2d ed.) p. 3794.

In his original policy of insurance the deceased bought and paid for a right to be reinstated after default in payment of premium upon furnishing evidence of insurability satisfactory to the company, and the payment of all past-due premiums with interest. The record shows that he was solicited to reinstate his policy and that he furnished the company all the evidence that it required as to his insurability. It is unnecessary for us to decide, and, therefore, we do not decide, whether the company might thereafter have required further evidence. The fact is on this record, as found by two juries, that the company delayed an unreasonable length of time in saying "yes" or "no" and only said "no" when it was accidentally discovered that the insured was at the very point of death. The record shows that the discovery of this situation was the reason for the company's letter of May 19 declining to reinstate the policy

and not, as stated in that letter, any failure on the part of the insured to furnish satisfactory evidence of insurability.

The record shows without dispute that the insured had furnished all the evidence he had been asked to furnish and that that evidence was entirely satisfactory. The jury found it was honestly given and the situation is no different than if the insured had been struck by lightning or hit by a truck on May 15, 17, or 19, 1933. The company had no contractual right to hold the deceased's money while it delayed for an unreasonable length of time a fulfillment of the contractual right to reinstatement. Two juries have found that it did so, and at the same time have found that the insured, honestly and in good faith, complied with the terms of his contract by furnishing all the evidence of insurability required by the company. The evidence in the record is ample to sustain the verdict of the jury and the trial court erred in allowing the motion for judgment *non obstante veredicto*.

The judgment of the Appellate Court and the judgment of the circuit court are each reversed, and the cause is remanded to the circuit court of Cook county, with directions to overrule the motion and enter judgment for the plaintiff.

*Reversed and remanded, with directions.*

Mr. JUSTICE STONE, specially concurring:

I agree with the conclusion reached in this opinion but not with all that is said therein.

WILSON, C.J., and GUNN, J., dissenting:

We are unable to concur in the majority opinion.

The plaintiff contends that the issue involved is whether the answers in the application for reinstatement were made in good faith, and contends they were representations and not warranties. She also claims it is a question for the jury as to whether the company unreasonably delayed passing upon the application for reinstatement.

The policy had lapsed on May 1, 1933, for non-payment of premium due, and could only be reinstated upon evidence of insurability satisfactory to the company. On May 6, 1933, the application for reinstatement was received. About a week after the application for reinstatement, the insured called upon a doctor complaining of headaches, weakness, difficulty of vision and nausea, and he was advised to go to a hospital for examination. On May 17, 1933, he had a diagnosis of tumor of the brain, and died as the result of an operation on May 19.

The opinion holds that one of the issues is whether the insured had acted in good faith when he stated in his application for reinstatement that he was in good health. In *United States Fidelity and Guaranty Co.* v. *First Nat. Bank,* 233 Ill. 475, we said: "The law is well settled, in its application to insurance contracts, that a misrepresentation of a material fact, in reliance upon which a contract of insurance is issued, will avoid the contract, and it is not essential, in equity, that such a misrepresentation should be known to be false. A material misrepresentation, whether made intentionally and knowingly or through mistake and in good faith, will avoid the policy." A misrepresentation is the statement of something as a fact which is untrue and material to the risk and which the insured states, knowing it to be untrue, in an attempt to deceive, or which he states positively is true without knowing it to be true and which has a tendency to mislead. *Hancock* v. *Knights and Ladies of Security,* 303 Ill. 66, 71.

In the application for reinstatement Froelich stated he was in good health and had not consulted a physician within the last five years. As pointed out above, at the time he made the application for reinstatement, or shortly thereafter, he was suffering from different things that indicated he was not in good health, and certainly on May 17, 1933, when he was informed he had to have an operation for a brain tumor, he knew he was not in good health. Under

these circumstances we think *Western and Southern Life Ins. Co.* v. *Tomasun,* 358 Ill. 496, is in point. In that case on the day the insured signed an application for a policy she consulted a doctor, and the next day was operated on in a hospital. The policy was delivered about two weeks later. The insured died in about a year. The court says: "Regardless of her knowledge on June 5, it cannot be urged with any degree of plausibility that she considered herself in good health when the policy was delivered two weeks later, and it became her duty during that interim—*i.e.,* after her examination and before the delivery of the policy—to disclose the changed condition in her health to the insurer."

The insured here understood he might not receive notice of approval from the company for thirty days because the receipt for the premium contained the following language: "If notice of approval is not received within thirty days the amount tendered will be refunded by this company upon request." Froelich consulted a doctor within a week after the application for reinstatement was received by the company, and went to the hospital within eleven days after the application was received, both within a period of thirty days within which, by implication at least, the company had a right to act on reinstatement.

In *Stipcich* v. *Metropolitan Life Ins. Co.* 277 U. S. 311, the court held that risks which come to the knowledge of the insured after the application, and before the delivery of the policy should be disclosed, saying: "If, while the company deliberates, he discovers facts which makes portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure. If he fails to do so, the company may, despite its acceptance of the application, decline to issue a policy." While it is true that this was said concerning an original application for insurance, there seems to be no distinction in applying the rule where used in connection with reinstatement as opposed to its use in taking out a new policy. 100 A. L. R. anno. 362; 4 Cooley's Briefs on Insurance, 3791.

The question of whether the defendant acted with reasonable celerity has no bearing upon the result in this case, because the facts as contained in the application for reinstatement changed in a material respect, which was known to the insured, and under such circumstances if the application had been granted without knowledge of the material change in facts it would have avoided the policy.

We think the judgment of the Appellate court should have been affirmed.

Upon petition for rehearing, the following additional opinion was filed:

Mr. JUSTICE SHAW delivered the additional opinion:

In this case there is a motion for leave to file a brief as *amicus curiae* in support of the pending petition for rehearing, to which motion is attached the brief sought to be filed. The brief seeks to present, *ex parte,* arguments properly under control of the parties to the record.

Any case decided by this court may vitally affect pending litigation or controversies between other parties, but this does not necessarly justify intervention. Intervention by counsel as a friend of the court is only justified when the intervenor can show to the court that, to protect it in the consideration of the case, such aid seems necessary or advisable. It has become apparent through the rapid increase of motions of this character that applications for leave to file a brief as *amicus curiae* must be restricted to such a showing, unaccompanied by the brief sought to be filed.

In the future, motions for such leave must be so limited, and no such motion which is accompanied by a brief will be received or considered. Further, no such motion, except in unusual cases, will be allowed unless it be shown that the parties to the litigation have overlooked or insufficiently briefed points and authorities essential to a proper consideration of the cause.