MALCOLM B. WALLACE, Plaintiff-Appellee, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellant.

(No. 71-31;

Fifth District—July 10, 1973.

David H. Bremer, of Roberts, Gundlach & Lee, of Belleville, for appellant.

Leon G. Scroggins, of Kinder, Scroggins & Kinder, of Granite City, for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This was an action in contract brought by the plaintiff-appellee to recover life insurance benefits for the death of one of the plaintiff's minor children under an alleged interim or temporary contract of life insurance

and, additionally, to recover punitive damages for alleged vexatious refusal to pay, together with attorneys' fees and interest. The jury returned a verdict in favor of the plaintiff for compensatory damages in the sum of $1000, for benefits under the alleged interim policy of family life insurance, and for punitive damages in the sum of $6000, for alleged vexatious refusal to pay pursuant to the terms of said policy. After entering judgment in the Circuit Court of Madison County on the jury's verdict in favor of the plaintiff, the trial court entered a judgment order awarding the plaintiff $700 in attorneys' fees pursuant to Ill. Rev. Stat., ch. 73, § 767, and interest at the rate of 5% on the $1000 interim family policy of life insurance from June 12, 1966, and the costs of suit, pursuant to Ill. Rev. Stat., ch. 74, § 2; defendant, The Prudential Insurance Company of America, has appealed.

On May 24, 1966 plaintiff-appellee, Malcolm B. Wallace, made an application to defendant-appellant, The Prudential Ins. Co. of America, for a family insurance policy. If issued, the policy would have provided life insurance in the amount of $1000 on the life of Malcolm F. Wallace, plaintiff's son. At the time plaintiff executed the application, he paid to Prudential's writing agent, Edward Opich, the sum of $13.40, representing a sum equal to the first full monthly premium on the policy in question, conditioned upon issuance of a standard policy in accordance with the terms and provisions of the application and conditional receipt of the application. The application was received by the home office of Prudential on May 31, 1966. After examining it, Prudential's underwriters, on June 1, 1966, sent a request to the East St. Louis District Office for more information with respect to scar tissue disclosed on the application and also requested, as a routine matter, an inspection report. On June 8, 1966 the inspection report was received, disclosing information that plaintiff had suffered a gunshot wound in 1960 and also suggesting possible excessive use of alcohol. Because of this information, it was determined that a medical examination of the plaintiff would be required before a final decision to accept or reject the application was made. A request was sent to the East St. Louis District Office for arrangements to be made for the medical examination.

On June 12, 1966, Malcolm F. Wallace, the five year old son of the plaintiff, was killed in an automobile accident. Mr. Opich, pursuant to the June 8th instructions, called the plaintiff's home on June 13, 1966 and was advised of a death in the family. Mr. Opich then called the funeral home and left a message that Mr. Wallace was to be examined on June 14, 1966. The Chicago home office of Prudential was notified of the child's death. The medical examination was performed and the physician's report was received at the home office on June 16, 1966.

This report disclosed among other things that the plaintiff was a substantial user of alcohol. This medical history was considered by Prudential's underwriters to be sufficiently serious to reject this application for the family policy on June 24, 1966. The plaintiff was informed of the underwriter's decision and his premium, which had been collected on May 24, 1966, was tendered to him, along with an offer by Prudential that he make application for a different type of policy. Both were refused.

Plaintiff testified that Mr. Opich stated that, if the first months' premium were paid at the time the application was taken on May 24, 1966, the policy would take effect immediately. He stated that Mr. Opich told him that Prudential might require a medical examination in conjunction with the application. Plaintiff stated that he recalled something about a conditional receipt, but he did not recall Mr. Opich giving him one. In his discovery deposition, plaintiff stated that he had looked and had not found a conditional receipt, but he was under the impression that he had received some type of receipt from Mr. Opich on May 24, 1966.

Mr. Opich testified that he advised Mr. Wallace that if the initial premium check were given at the time of the application there was the *possibility* that the insurance coverage would relate back to the date of the application, but also that there was the possibility of a medical examination and, if a medical examination were ordered, the insurance would become effective upon the date of the examination if the policy were ultimately issued. Mr. Opich stated that he did *not* tell Mr. Wallace that he was insured as of May 24, 1966. Mr. Opich also said that he told Mr. Wallace that the decision of whether or not a physical would be required would be determined by the Chicago home office. He stated that he definitely did give Mr. Wallace a conditional receipt upon receiving the first premium payment on May 24, 1966, and he further stated that he generally explained the conditions contained in the conditional receipt.

Mr. Falk, senior underwriting consultant with Prudential, testified that the death of Malcolm F. Wallace played no part in his judgment to reject this application, that the application was rejected for a variety of reasons, pursuant to guidelines established by Prudential as company policy. Since the application and medical exam revealed that plaintiff had drinking problems, the company's guidelines respecting drinking as it may affect applicants' insurability were applied and resulted in a classification that was beyond the maximum for this policy of family insurance. Therefore Mr. Wallace's application was rejected.

The issues presented for review are:

—whether the trial court erred in denying defendant's motion for a

directed verdict at the close of plaintiff's evidence, and at the close of all the evidence, and in submitting this case to the jury on the issues of compensatory and punitive damages;

—whether or not the trial court erred in denying the defendant's motion to strike and dismiss plaintiff's prayer for punitive damages;

—whether the trial court ruled correctly on certain objections to evidence and offers of proof;

—whether the trial court erred in awarding attorney's fees and interest after the jury returned its verdict.

Dealing initially with the sufficiency of the evidence, the plaintiff argues that, inasmuch as he paid the writing agent of Prudential, Mr. Opich, the sum of $13.41 on May 24, 1966, a sum equal to the first monthly premium payment, there arose an interim or temporary contract of insurance as applied for in the application and in accordance with the terms of the conditional receipt, which contained the conditions under which interim coverage may arise. Plaintiff in his reply to the defendant's affirmative defenses neither admitted nor denied receipt of the conditional receipt, and was unable to produce the original conditional receipt at the trial. He stated, however, that he may have received it, but that he was not certain of this fact. Mr. Opich testified unequivocally that he filled in the appropriate information on the conditional receipt and gave it to Mr. Wallace on May 24, 1966. The defendant-appellant contends that there was no insurance in force on the date of the minor child's death; for, under the terms of the application and the conditional receipt, the effective date of the insurance, had the application been accepted, occurred after the date the plaintiff's child was killed. In addition, the insurance was conditioned upon the plaintiff being insurable in accordance with the provisions of the conditional receipt, and the plaintiff was medically disqualified for issuance of the policy in question.

■■ The applicable Illinois law on this subject sustains the defendant-appellants' allegations. An application for insurance is a mere offer; it creates no rights and imposes no duty upon the insurer. (*Moore v. Insurance Co. of North America* (1964), 49 Ill.App.2d 287, 200 N.E.2d 1.) Ordinarily, where the application provides that no liability shall attach until its approval by the home office or by a general agent of the company, there is *no* insurance pending such approval. (*Palmer v. Bull Dog Auto Insurance Assoc.* (1920), 294 Ill. 287, 128 N.E. 499.) E. T. O'Neill, *Interim Coverage: Conditional Receipts,* 1964 Univ. of Illinois Law Forum 571 at 574-575.

■■ An application and receipt which clearly make coverage dependent upon either approval of the application or insurability under the company's rules as of the time of payment of the initial premium

will be upheld. Unless the condition precedent is fulfilled, no interim coverage is in effect. (*Scheinman v. Phoenix Mutual Life Insurance Co.* (7th Cir. 1969), 490 F.2d 999; *Gerrib v. Northwestern Mutual Life Insurance Co.*, 256 Ill.App. 506.) See also *American National Bank and Trust Co. v. Certain Underwriters* (7th Cir. 1971), 444 F.2d 640 at 643-44. While there seems to be a question of fact whether or not the plaintiff-appellee in the case at bar actually received a conditional receipt, it is undisputed that he signed the application form itself wherein it states:

> "The undersigned agree(s): * * * (3) that except as may be otherwise provided in the Conditional Receipt * * *, no insurance shall take effect unless: (a) a policy is issued by the Company and delivered to and accepted by the proposed Insured during the lifetime of the proposed Insured and the other persons now proposed for coverage, * * *."

Therefore, even under the terms of the application itself, no contract of insurance was in effect at the time of the minor child's death, because no policy had been issued by Prudential. And in signing the application form, plaintiff agreed to these terms.

Secondly, the plaintiff-appellee testified that the defendant's writing agent stated that if the first month's premium were paid at the time the application was taken on May 24, 1966, the policy would take effect immediately. The plaintiff's contention that a temporary contract of insurance was in effect, based upon statements allegedly made by Mr. Opich, is without support.

■■■ In *Sommerio v. Prudential Insurance Co. of America* (1937), 289 Ill.App. 520, 7 N.E.2d 631, cited by the defendant-appellant, the court held, at 528, that "in order to recover upon an application where it is claimed that the approval of the policy by the home office was waived by the writing agent, a clear showing should be made that the agent had authority to waive provisions of the receipt, and, in the absence of such showing, oral conversations had contemporaneously with the signing of the application should not be given effect as against the express written provisions of the receipt stating otherwise." And, at 524, the court in *Sommerio* stated that in order to show that a solicitor has broader powers, or the powers of a general agent, it is incumbent upon the party so contending to show, by competent evidence other than the testimony of the agent himself, the specific authority claimed. In the case at bar, the plaintiff-appellee failed to show that Mr. Opich, the writing agent, had any authority to waive the provisions of the application or receipt. Plaintiff merely testified as to what Mr. Opich allegedly said at the signing of the application. Furthermore, both the application and the receipt expressly state that "no agent has the authority to waive the

answer to any question in the application, to modify the application, or to bind the Company by making any promises or representation or by giving or receiving any information". Plaintiff signed the application wherein it states that the undersigned agrees to such conditions; therefore he is bound by those conditions.

The case cited by the plaintiff-appellee to support his contention that there was a waiver, *Colontuono v. State Farm Insurance Co.* (1972), 8 Ill.App.3d 84, 289 N.E.2d 235, can be distinguished upon its facts from the case at bar. In that case the writing agent, when asked if a physical was required, said no and told the applicant that the insurance would go into effect immediately, all contrary to the conditional binding receipt. On the question of whether or not the agent waived the company's rights, the court said that was a question to be determined by the trier of fact, *but* it did so only because there was evidence that the company sales manager trained the writing agents and as part of that training the agents would accompany him on calls. His approach was to inform clients, when asked, that they would be covered immediately upon signing the application and making payment of the first premium. There was no evidence of such practice in the case at bar.

Under the facts of the case before us, the trial court should have allowed the defendant's motion for a directed verdict at the close of the plaintiff's case and at the close of all the evidence and the defendant's post-trial motion for judgment notwithstanding the verdict, with reference to plaintiff's alleged cause of action for a temporary contract of insurance, because, under the terms of the application and the conditional receipt, no contract was in effect on the date Malcolm F. Wallace died.

The second issue for consideration is whether or not the trial court erred in denying defendant's motion to strike and dismiss plaintiff's prayer for punitive damages, and whether or not the trial court erred in giving its instructions on damages.

■■ Plaintiff's complaint involved an action in contract for alleged interim insurance coverage, with a prayer for both compensatory and punitive damages. The defendant alleges that the prayer for punitive damages has no basis in either Illinois statutory or common law. The law on this subject is quite clear—exemplary or punitive damages are *not* to be allowed in actions for breach of contract. (*Wheeler v. Cannon* (1899), 84 Ill.App. 591; *Restatement of Contracts* (1932), sec. 342; *25 C.J.S. Damages* (1956), sec. 120.) In *Miller v. Board of Education* (1968), 98 Ill.App.2d 305, 240 N.E.2d 471, the court held that an elementary school teacher under contract who was wrongfully discharged was *not* entitled to an award for punitive damages.

■■ This rule does not obtain, however, in those exceptional cases

where the breach amounts to an independent, willful tort, in which event exemplary damages may be recovered under *proper allegations* of malice, wantonness, or oppression. (*25 C. S. Damages* (1956), sec. 120.) The case at bar is not an exception to the general rule. Other than making a prayer for punitive damages, plaintiff did not attempt to allege facts which would bring this claim for punitive damages under any recognized tort theory. And furthermore, it does not appear that the defendant was either malicious or oppressive by merely applying the *rules* and *standards of the company in rejecting the plaintiff's applica-tion.

Since recovery on the policy cannot be sustained, neither attorney fees nor interest can be sustained.

The judgment is accordingly reversed.

G. MORAN and JONES, JJ., concur.