Maria RIVOTA, Administrator of the Estate of Jesus H. Rivota, Deceased, and Maria Rivota, in her own Individual Capacity, Plaintiff-Appellant,

v.

FIDELITY & GUARANTY LIFE INSURANCE COMPANY, Defendant-Appellee.

No. 73-1455.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1974.

Decided May 31, 1974.

William D. Klink, Chicago, Ill., for plaintiff-appellant.

Robert L. Kiesler, Chicago, Ill., for defendant-appellee.

Before HASTINGS, Senior Circuit Judge, and CUMMINGS and STEVENS, Circuit Judges.

HASTINGS, Senior Circuit Judge.

On November 8, 1971, Jesus Rivota applied to defendant Fidelity & Guaranty Life Insurance Company for a twenty-year term life insurance policy upon his own life in the amount of $21,000. His wife, Maria Rivota, was named in the application as the primary beneficiary. Mr. Rivota paid $36.72 to defendant's agent for interim protection and received in exchange a "conditional receipt." On November 17, 1971, before the application was either approved or rejected by the company, Mr. Rivota was struck by an automobile and was killed. Upon the company's refusal to pay the amount stated in the application, Mrs. Rivota, in her individual capacity and as administrator of her husband's estate, brought the present action in district court.[1]

It appears from the record that .Mr. Rivota received a serious stab wound in a tavern brawl shortly before he applied for the insurance in question. He failed to reveal such injury on his application.

In essence, the complaint alleged that at the time of Rivota's death there was in effect a "contract of temporary interim term life insurance" which was evidenced by the conditional receipt. Defendant answered the complaint and thereafter filed a motion and brief for summary judgment, in which the issue was stated as follows: "Did [defendant's] Conditional Receipt extend life insurance coverage to Jesus H. Rivota or did it deny such coverage until Rivota's application had been accepted by the company?" The district court granted defendant's motion for summary judgment on the ground that "under Illinois law, decedent's application constituted nothing more than an offer which was not accepted by defendant." In thus determining the law of Illinois, the court relied upon Gerrib v. Northwestern Mutual Life Insurance Co., 256 Ill.App. 506 (1930), and upon this court's recognition of *Gerrib* in two recent opinions, Scheinman v. Phoenix Mutual Life Insurance Co., 7 Cir., 409 F.2d 999, 1001 (1969), and American National Bank & Trust Co. v. Certain Underwriters at Lloyd's London, 7 Cir., 444 F.2d 640, 643 (1971).

On appeal, plaintiff contends that *Gerrib* is not controlling and that the issue before us is one of first impression in Illinois. She argues that under the terms of the conditional receipt the company was obligated to make a good faith determination of Rivota's insurability as of the time of the application and irrespective of his intervening death. Defendant replies that the application was a "mere offer" to purchase insurance and that the conditional receipt conferred no rights upon the insured or his

---

1. Jurisdiction was based upon diversity of citizenship. The parties agree that Illinois law governs.

beneficiary until the application was accepted by the company. Implicit in the company's argument is the assertion of a right to reject the application for any reason whatsoever, including the fact that the applicant had died. In the alternative, defendant argues that Rivota was not insurable and that there can be no genuine issue as to this fact.

We have concluded that this case is not controlled by the *Gerrib* decision, and that under Illinois law, the conditional receipt here involved did confer certain rights upon the proposed insured. Also, we are unable on this record to conclude that there is no genuine issue as to any material fact.

## I.

 Defendant's conditional receipt is a printed form. On the front side it states that "issuance of this receipt does not place any insurance in effect for any period unless the proposed insured(s) was (were) insurable and acceptable as provided below." Thereunder the following appears: "Important: (1) This Receipt does not provide any insurance until after its conditions are met. * * * (3) The payment is received subject to the conditions on the other side of this Receipt." The remainder of the front side contains blanks for filling in names, date and amount received.

The conditions of the receipt appear on its reverse side and read as follows:

"Insurance under the terms of the policy applied for * * *, and subject to the limits specified below shall take effect as of the last of any medical examinations or tests required under the rules and practices of the Company or the date of this payment whichever shall be the later, provided on that date the Proposed Insured(s), in the opinion of the Company's authorized officers at its Home Office was (were) insurable and acceptable

under the rules and practices of the Company as a standard risk for the policy * * *; otherwise there shall be no liability on the part of the Company except to return this payment in the form of the Company's check. * * *" [Other conditions omitted.]

In our opinion, this language is not ambiguous. The receipt plainly provides that coverage shall relate back to the later of two dates: the date of the initial payment or the date of any required medical examination.[2] Further, the finding of insurability, which is the prerequisite to coverage, is to be based upon the applicant's status as of such later date.

It would appear that the provisions of the instant conditional receipt were intended to give applicants two advantages in return for their initial payment. First, the applicant was to be protected against subsequent changes in physical condition which might otherwise render him unacceptable to the company. Equally important, the parties provided for the possibility that death might occur to an insurable applicant prior to the completion of the company's evaluation of the application.

The phrase "otherwise there shall be no liability" is meaningless unless liability under some circumstances can in fact arise. Defendant's presumed liability under a policy of term life insurance is, of course, to provide payment upon death. Yet, if the company is free to reject or refuse to act upon an application solely because the applicant has died in the interim, then liability in all likelihood would never arise under the terms of *this conditional receipt*. We can only conclude that the parties intended that the company would evaluate and either accept or reject this application without regard to an intervening death or other change in insurability.

 Such a construction hardly means, as defendant here argues, that

2. It is agreed that Rivota did not undergo a medical examination. Without conceding the point, defendant on this appeal has not

seriously argued that he was required to do so.

the company may be "forced to carry a risk without its consent." Liability under this receipt arises only because defendant has consented to insure any applicant who proves to be insurable and acceptable by defendant's own standards. Furthermore, absent intervening events which affect the risk, the receipt may not be read to grant a right of judicial review to rejected applicants. Evers v. Standard Security Life Insurance Co., W.D.Va., 345 F.Supp. 1162, 1166 (1972). In the normal rejection situation it may fairly be presumed that the company's determination was based upon insurability and acceptability, and as of the prior date. Where a significant intervening event does occur, however, a fair balancing of the competing interests requires that the insurer make some showing that its rejection was based solely upon considerations which are permissible under the terms of the receipt. American National Bank & Trust Co. v. Certain Underwriters at Lloyd's London, 7 Cir., 444 F.2d 640 (1971).

In *American National Bank,* which involved conditional life insurance "binders," we recognized three potential solutions to the problem created by a rejection subsequent to death or serious change in insurability. These were: (1) to give retroactive effect to the rejection, regardless of the reason therefor (*i.e.,* to treat the binder as evidencing nothing more than a mere offer); (2) to treat the binder as a binding policy of temporary insurance during the interim, regardless of the applicant's initial insurability; and (3) to give effect to the rejection "only where, on as objective a basis as possible, it is reasonable to say that the rejection is based

on the circumstances which existed at the time of the application." 444 F.2d at 643. We concluded that

" * * * solution (3) fairly balances the applicant's interest in prompt protection, if available, against the insurer's interest in accepting only the risks which are insurable under its underwriting standards, gives some effect to all the terms used in the binder, and does not conflict with past decisions of the Illinois courts." 444 F.2d at 644 (footnote omitted).[3]

But for Gerrib v. Northwestern Mutual Life Insurance Co., 256 Ill.App. 506 (1930), we would not hesitate to reach the same result here.[4] Since the district court based its view of Illinois law upon *Gerrib,* a careful consideration of that case is in order.

Construing a conditional receipt similar to Rivota's, the Illinois Appellate Court in *Gerrib* concluded that the application was "a mere offer to accept insurance." 256 Ill.App. at 523. *Gerrib* has been cited by the Illinois courts only once;[5] the parties have not cited, nor have we found, any other Illinois case which has considered the precise issue here involved.

This court is fully cognizant of the strictures placed upon the federal judiciary by the Rules of Decision Act, 28 U. S.C. § 1652, as interpreted by Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny. Were this merely a case where federal judges were inclined to disagree with the most recent state decision on point, we would nevertheless be bound by that state decision. Six Companies v.

---

3. Scheinman v. Phoenix Mutual Life Insurance Co., 7 Cir., 409 F.2d 999 (1969), relied upon heavily by defendant, goes no further than to reject the second, "binding temporary insurance" interpretation. In *Scheinman* the applicant died of a heart attack one day after undergoing a required medical examination which had revealed serious heart disease.

4. The *American National Bank* court distinguished *Gerrib* on the ground that in *Ameri-*

*can National Bank* the insurers had represented that the insurance was "bound" subject to underwriter approval. No such express "binder" language is present in this defendant's form receipt.

5. Wallace v. Prudential Insurance Co., 12 Ill.App.3d 623, 628, 299 N.E.2d 344, 347 (1973). *Wallace* cited *Gerrib* merely for the proposition that "[u]nless the condition precedent is fulfilled, no interim coverage is in effect."

Joint Highway District, 311 U.S. 180 (1940); West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940).[6] Here, however, because of "doubts or ambiguities" in the *Gerrib* opinion itself, it is far from clear that under the law of Illinois the present receipt must be construed as evidencing nothing more than a mere offer. Bernhardt v. Polygraphic Co., 350 U.S. 198, 205, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

■ In the first place, although the receipt in *Gerrib* was similar to Rivota's, it contained an additional provision to the effect that the company had until the delivery of the policy to consider the question of the applicant's acceptability. The *Gerrib* court thus may have regarded the condition precedent to be the actual delivery of the policy rather than the satisfaction of an insurability standard. Compare 1 Couch on Insurance 2d § 14.45 with §§ 14.41 and 14.46; and *cf.* Wallace v. Prudential Insurance Co., 12 Ill.App.3d 623, 299 N.E.2d 344 (1973). Second, the *Gerrib* court did not discuss or appear to consider the third alternative recognized in *American National Bank*. We need not regard as strictly binding a state decision in which the rule now urged may have failed for want of an advocate.[7] *Cf.* Commissioner v. Estate of Bosch, 387 U.S. 456, 474–482, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967) (Harlan, J., dissenting); Pre-Cast Concrete Products, Inc. v. Home Insurance Co., 7 Cir., 417 F.2d 1323, 1326–1327 (1969). Third, although *Gerrib* had been decided by the trial court on the procedural equivalent of a motion for summary judgment, on appeal the court appeared to accept defendant's allegation that the policy had been rejected prior to the death of the applicant, and that the applicant was not insurable

under the company's standards. 256 Ill. App. at 512–514; and see 1 Couch on Insurance 2d § 14.45, n. 17; 2 A.L.R.2d 986–987. In sum, it does not appear that the issue now facing our court was squarely met and resolved in *Gerrib*.

We are also impressed that in a closely related context, Illinois law recognizes an insurer's obligation to act reasonably in making determinations of insurability. The Illinois Supreme Court on at least two occasions has construed insurance policy provisions which permit the reinstatement of lapsed policies provided the insured shall pay past due premiums and shall submit "evidence of insurability satisfactory to the company." Kahn v. Continental Casualty Co., 391 Ill. 445, 63 N.E.2d 468 (1945); Froehler v. North American Life Insurance Co., 374 Ill. 17, 27 N.E.2d 833 (1940). That court has concluded that such provisions " '[do] not contemplate the exercise of the insurer's taste or fancy or caprice.' " *Kahn, supra,* at p. 458 (quoting Thompson v. Postal Life Ins. Co., 226 N.Y. 363, 123 N.E. 750). See also, Funk v. Franklin Life Insurance Co., 7 Cir., 392 F.2d 913, 917 (1968), in which this court, applying Illinois law, stated that "[w]here death intervenes before action has been taken on the reinstatement application, the insurer is nevertheless bound to act reasonably in its determination of insurability."

Of course, in reinstatement cases the existence of an underlying contract is generally conceded, whereas here the issue is whether a contract was ever created. Both *Kahn* and *Froehler* note a distinction between reinstatement applications and original applications. Yet, because the company here accepted $36.72 from Rivota and in return issued him a conditional receipt which purports to bind the company to something, the

---

6. But see Commissioner v. Estate of Bosch, 387 U.S. 456, 476, n. 6, 87 S.Ct. 1776, 18 L. Ed.2d 886 (1967) (Harlan, J., dissenting).

7. The trial court in *Gerrib* appeared to hold that a binding contract of insurance was created irrespective of the applicant's ac-

ceptability to the company. In view of strong evidence that the applicant in fact was not insurable, it is doubtful that the appellee argued in the alternative for a remand.

present case more nearly resembles the reinstatement application situation than the typical original application case. Once it is recognized that phrases such as "satisfactory to the company"—or here, "in the opinion of the Company's authorized officers"—are susceptible of judicial review, there remains no reason to regard as less than a contract that which in every other respect is a contract.

■ We conclude that the Illinois Supreme Court, on the facts of this case, would hold that defendant may withhold coverage under this conditional receipt only if Rivota, as of the relevant date, was not "insurable and acceptable under the rules and practices of the Company as a standard risk for the policy."

## II.

■ In its brief defendant raises the question of Rivota's insurability as an "additional issue," *viz.*, "Did [defendant] have a right to reject the application of Jesus H. Rivota based upon the fact that the application failed to meet the Company's standards?" Having stated the question, however, the brief presents no argument on the point. In similar fashion, after setting forth various facts relating to the stab wound, defendant's motion and brief for summary judgment in the court below stated and argued only the single issue of whether the conditional receipt imposed any legally enforceable obligation upon the company. Accordingly, the district court confined its opinion to that single issue. Our re-

view of the question is further hampered by the parties' failure to transmit to us the complete district court record. Neither plaintiff's answer to the motion for summary judgment nor defendant's reply thereto are before us.

During oral argument, counsel for defendant directed our attention to certain answers to plaintiff's interrogatories. The answers were apparently given and signed by an assistant vice president of defendant.[8] The answer upon which defendant particularly relies merely reiterates the conditional receipt's requirement that the applicant be insurable and acceptable under the rules and practices of the company, and states that "Rivota was never deemed so acceptable." (Answer No. 57.) Such answer fails to state why Rivota was "never deemed acceptable," and may indicate nothing more than that the company considered itself under no obligation to act upon the application. Indeed, the interrogatory answers as a whole evidence a careful adherence to the company's primary legal position that the receipt gave Rivota no rights whatsoever.[9] As a result the underwriting standards of the company which are relevant to Rivota's application are not, in our opinion, so adequately developed that we may affirm the summary judgment on this ground.[10]

On the record of this case as it now stands there remains a genuine issue of fact concerning the "rules and practices of the Company" in determining whether or not Rivota "in the opinion of the Company's authorized officers at its

---

8. The record contains only a carbon copy of the original answers, without signatures.

9. For example, in response to the question whether Rivota concealed or misrepresented any material fact, the company responded as follows:

"The Defendant has not yet determined, nor is it required now to determine whether or not it shall proceed upon a defense of misrepresentation and false warranty in addition to any other defenses which may be available to it. Further, this question need not be answered at this time since pursuant to the terms of the

Conditional Receipt, no policy was issued." Answers 42 through 54.

10. Compare *American National Bank, supra,* where summary judgment in favor of the insurers was affirmed upon affidavits by company underwriters which explained the applicant's rejection in light of company rules and practices. 444 F.2d at 643–644. We do not suggest that in order to show lack of insurability the company must always point to an applicable written rule contained in an underwriting manual. The phrase "rules and practices of the Company" may include a practice of case-by-case determination in situations involving unusual risk factors.

Home Office was insurable and acceptable." This question remains to be determined by the district court upon remand.

For the foregoing reasons, the summary judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.