LEONARD, by guardian *ad litem,* Respondent, vs. PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant.

*April 18—May 8, 1906.*

*Life insurance: Revival after lapse: Contract construed: Negligent delay of insurer: Secret inquiry: Failure to notify assured of denial: Estoppel.*

1. A life insurance policy provided that, in case of lapse for nonpayment of a premium, it would be revived at any time within two years upon written application and payment of arrears, provided evidence of the insurability of the assured, satisfactory to the company, were furnished. *Held,* that an assured applying for such a revival did not stand in the same position as an applicant for a policy in the first instance, but had a contract right to the revival upon the specified conditions.

2. The company in such a case was bound to act reasonably and with fairness to the assured. It had no right of arbitrary refusal, or right to act upon information secretly obtained without opportunity for the assured to meet it.

3. The company was bound, also, to act with reasonable promptness in passing upon an application for revival, and if the result was unfavorable to notify the assured.

4. A policy containing such provision for revival after default did not, nor did any custom, require the issuance of a revival receipt. After the assured, applying for a revival, had submitted to a medical examination to show his insurability, the company's

examiner negligently failed for thirty days to send in his report, and the company thereafter failed for six weeks to pass upon the application, making in the meantime a secret inquiry as to the habits of the assured, and then, after denying the application, failed to give notice of such action to the assured or any one representing him until some days after his death, which occurred about seventeen days after such denial. *Held*, that the company was estopped to assert that the policy had not been revived.

APPEAL from a judgment of the circuit court for Chippewa county: A. J. VINJE, Circuit Judge. *Affirmed.*

Action to recover on a policy of life insurance.

The complaint contained a statement of facts necessary to recover on a $1,000 policy issued by the defendant on the life of Thomas Bertram Leonard, for the benefit of the plaintiff. These facts, among others, were alleged: The policy was issued July 8, 1902. The annual agreed payment was $26.55. It was required to be paid on the 8th day of July in each year till the contract matured. The assured died January 28, 1905. He failed to make the payment for 1904 till October 26 of that year. On that date he made his payment, together with $1.40, being the interest and charges required under the contract to secure a continuance of the policy, notwithstanding the default, in case of his furnishing satisfactory proof of his being an insurable risk. He furnished such proof. The payment was made and received unconditionally. The money was retained by defendant without notice to the assured of any decision not to restore his policy. No offer to return the money or such notice occurred till after the assured died. There was ample time for the defendant to have made such offer and given such notice prior to such death, subsequent to its obtaining full knowledge of all facts material for it to know in passing on the question of whether the policy should be continued notwithstanding the default. By reason of such failure such default was waived, and the policy in accordance with the contract of

insurance revived and continued. The provisions in the con-
tract in that regard were as follows:

"If this policy be lapsed by nonpayment, it will be re-
vived any time within two years after the due date of such
premium, as specified on the first page hereof, upon written
application and payment of arrears of premium, with inter-
est at the rate of five per cent. per annum, provided evidence
of insurability of the insured, satisfactory to the company,
be furnished. Application for revival after two years from
such date will receive equitable consideration."

"If any premium be not paid when due, this policy shall
be void, and all premiums forfeited to the company, except
as herein provided."

"If this policy, after being in force two full years, shall
lapse for the nonpayment of premiums, the company will con-
tinue in force the insurance under the policy for 120 days
from the date of such premium."

The defendant answered, defensively, as follows: The as-
sured failed to pay the premium due on his policy for 1904,
when the same fell due, July 8th of that year, or thereafter
though he survived such due date over six months, whereby
the policy became forfeited by its terms. After the forfeiture
it was not revived or continued. October 2, 1904, the as-
sured applied for a revival of his policy, depositing with the
defendant's duly authorized local agent the sum of money
alleged in the complaint as having been paid. The money was
received upon condition that the application should not be
granted until the defendant should formally approve it, in
the lifetime and during the good health of the assured, which
condition he understood and agreed to. Evidence satisfactory
to the defendant, of the insurability of the assured, was not
furnished it, and upon due consideration of the matter the
application was rejected and the deposit returned.

Upon the trial, proof was made as follows: The assured
made application in the form required by the defendant for
a continuation of his policy, paying defendant the full amount
of money required for that purpose, the same being received

by defendant's duly authorized agent, and kept by the agent as a special deposit. The application was, in part, in these words:

"I, the undersigned, hereby declare and warrant that I am of sober and temperate habits, and that I am in good health and have been in good health since the date of the issue of my policy. I hereby request the policy, which was lapsed for the nonpayment of the premiums, to be reinstated, and to that end tender the arrears to the company, with interest at five per cent. per annum, with the understanding that the policy, to the conditions of which I hereby agree, will not be in force until the company has, during my lifetime and good health, approved this application. I agree to accept a return of said arrears and interest should the company decline, for any reason, to approve this application."

For proof of his insurability, assured was required to submit to an examination by the defendant's medical examiner, and show thereby that he was insurable. He did in the early part of November, 1904. The examiner neglected, without reasonable excuse, to make his report, which it was his duty to do, to the defendant, for a period of some thirty days. He then re-examined the assured, and made his report in the form required by the company, which was to the effect that the assured was in good health and safely insurable. The report, application, and agent's certificate of payment of arrears were sent to the defendant's head office, and brought to the attention of its medical director early in December aforesaid. Thereafter no notice of any action on the application was given to the assured. It was not finally acted upon till about January 11, 1905. Immediately thereafter notice that it had been denied was given to the local agent, but he did not give notice thereof to the assured, or to any one representing him, till some days after the death occurred. The rejection of the application was not based on any defect in the evidence furnished by the assured, but on the result of a secret inquiry conducted by defendant. The source of its in-

formation, whether reliable or not, was not shown upon the trial. The purport thereof, as claimed by the defendant, was that the assured was intemperate. There was no proof offered by defendant that the statements in the application and the medical examiner's report, or any of them, were untrue, nor any proof that in case of the continuance of a policy under such circumstances as those stated any notice to the assured was required or customarily given.

At the close of the evidence, the court, on motion, directed the jury to render a verdict in favor of the plaintiff, in accordance with the prayer of the complaint.

For the appellant there were briefs by *W. M. Bowe,* attorney, and *Durment & Moore,* of counsel, and oral argument by *E. S. Durment.* They cited *Behling v. N. W. Nat. L. Ins. Co.* 117 Wis. 24; *Chamberlain v. Prudential Ins. Co.* 109 Wis. 4; *Brink v. Merchants' & F. U. Mut. Ins. Asso.* 17 S. Dak. 235, 95 N. W. 929; *Conn. Mut. L. Ins. Co. v. Rudolph,* 45 Tex. 454; *Kohen v. Mut. R. F. L. Asso.* 27 Fed. 705; *Misselhorn v. Mut. R. F. L. Asso.* 30 Fed. 545; *Rose v. N. Y. L. Ins. Co.* 124 N. C. 395; *McDonald v. Provident Sav. L. Assur. Soc.* 108 Wis. 213; *More v. N. Y. B. F. Ins. Co.* 130 N. Y. 543; *Royal Ins. Co. v. Beatty,* 119 Pa. St. 6; *Harp v. Grangers' Mut. F. Ins. Co.* 49 Md. 308.

For the respondent there was a brief by *T. J. Connor,* and oral argument by *H. B. Walmsley.*

MARSHALL, J. The appeal must be tested by the plain obligations of the insurance contract, and a few—perhaps but one—very familiar principles of law.

The failure of the assured to pay the 1904 premium, due July 8th of that year, did not work a forfeiture of the policy. It caused, what is termed in the policy, a "lapse:" the commencement of a period of two years during which it still possessed such vitality that, had death occurred within the first 120 days thereof, the appellant would have been liable for the

full amount stipulated in the policy; and that for the full term the assured, had he lived, was entitled, as matter of contract right—a right bought and paid for, a right as fixed and certain as any other obligation incurred by the appellant or secured by the assured,—to have the policy fully restored upon his paying the arrears of premiums, with interest at the rate of five per cent. per annum, and furnishing appellant evidence of his insurability satisfactory to it.

,So the relations between the parties to the insurance contract when the assured made his application to revive the same were not, by any means, the same as those between an applicant for a policy in the first instance, and the company applied to, as appellant's counsel contend. In the latter, the application could be rejected at the pleasure of the company; the attitude of the applicant being that of one offering to take from another that which such other is not under any legal obligation to deliver. In the case in hand the attitude of applicant was that of one demanding a right which, upon the conditions precedent in the contract to its ripening into a complete obligation, it was not within the power of appellant to successfully withhold.

When the application was made in due form, the arrears paid, the examination by appellant's medical examiner submitted to, and the case fully made up so far as the assured was concerned for action by appellant, the latter was bound by the contract, by necessary implication, to pass upon the matter within a reasonable time, and if the result was unfavorable to notify the assured. Since the result of the examination by appellant's instrumentality in that regard was in every way favorable to the assured, he had a right to assume, not hearing to the contrary, that his evidence of insurability was satisfactory. There was no provision in the contract for the issuance of a revival receipt, nor was there any custom to issue such evidence so far as the record shows. The evidence indicates that the procedure for a revival was

(1) to make a written application, using a printed form furnished by the appellant, (2) to submit to an examination by the latter's medical examiner, the result to be certified thereto by him in accordance with its furnished form, (3) the making of the necessary payment of arrears and charges to the local agent, whose duty it was to certify the fact in that regard, using a printed form likewise furnished for that purpose. These three instruments, showing upon their face the facts entitling an assured to a revival of his lapsed policy according to the method of doing business which appellant adopted and required, close a case ready for the latter's consideration.

The case here was thus fully closed, as appears, and placed in appellant's possession about December 2, 1904. It would have been so closed and placed about one month earlier but for the inexcusable negligence of appellant's medical examiner, for whose default it is responsible. The record thus made, on its face, as is in effect confessed, showed every essential to a continuation of the policy subject to appellant's approval.

In considering the case so made, appellant was bound to act reasonably. The agreement to restore the policy upon specified conditions, when they were satisfied according to the prescribed procedure, wanting only appellant's judgment upon the record made, carried with it, by necessary implication, the obligation to act reasonably and with fairness to the assured. Appellant had no right of arbitrary refusal, or right to act upon information secretly obtained without opportunity for the assured to meet it. Such a course was contrary to the letter and spirit of the insurance contract. The company was entitled to be satisfied of the insurability of the applicant before restoring the policy, but it had no right, by proceedings outside of anything contemplated by the contract, to create dissatisfaction. When in all reason it ought to have been satisfied or to have notified the assured to furnish further evi-

dence, it was bound to be satisfied or to so notify him. It was also bound by contract, as well as in good morals, to act with some reasonable degree of promptness.

Life insurance has come to be deemed so essential to security of the family, in case of the bread-winning member thereof being removed, that for an insurance company, which is continually inculcating that idea, to permit one to sleep upon the faith of an existing contract of insurance with it when there is none in fact, is a grievous wrong. For appellant in this case to remain silent, as it did for weeks, knowing or having good reason to know that the assured supposed his contract had been restored, and in the meantime to pursue a secret investigation and then act upon information thus obtained without opportunity for the assured to meet it, was contrary to the plainest principles of justice, and wholly outside of anything that could reasonably have been in contemplation of the parties when the policy was issued. The contract right to a renewal of the policy upon condition, by necessary implication, carried with it the right to have the proceedings for compliance with such condition treated according to common principles of fairness.

The implied obligation of appellant to act with reasonable promptness in passing upon the application for a renewal of the policy was clearly breached by negligence of its medical examiner in failing to send in his report for some thirty days after the examination and negligence of the appellant in failing to pass upon the case made for some six weeks after receiving the proofs. The implied obligation of appellant to notify the assured of its adverse action within a reasonable time after it occurred, and to return the money paid to it for the renewal, was clearly breached by failure to bring the matter to the attention of the assured during the seventy days he lived after such occurrence.

Appellant's silence for some two months after an apparently perfect case for revival was submitted, precluded it, on

principles of *estoppel in pais,* from subsequently being heard to the detriment of the beneficiary. He who remains silent when in justice to another he ought to speak, will not be heard to that other's prejudice when he subsequently breaks such silence, is a rule of equity that applies very clearly to the facts of this case.

The case is one so clearly ruled on familiar principles applicable to contracts of insurance, construed as was evidently intended in this case, that we have reached the conclusion indicated, without any such call for the citation of authorities by way of illustration as to warrant referring thereto. The array of authorities pressed upon our attention by counsel for appellant, dealing with original applications for insurance, are doubtless right as regards the facts with which they deal, but they are entirely unsuitable as guides in reaching a proper decision in this case. Here there was a contract of insurance in part, as has been said, when the application for revival was made. It had been paid for, and as to the right of restoration it was in full force when the assured's case in that regard was submitted for consideration. It cannot be characterized otherwise than a fraud upon the latter and his beneficiary, to go outside such case and act adversely thereto upon information stealthily obtained, giving no opportunity to be heard in opposition thereto, and then to remain silent till the death of the assured, though there was ample time to have acquainted him with the facts days and weeks prior thereto. Such conduct is so out of harmony with the theory and spirit of life insurance contracts, and so contradictory to the attitude uniformly assumed by life insurance companies in soliciting patronage, as to be manifestly outside of anything contemplated by both parties to the policy in question. It cannot receive favorable consideration at the bar of justice.

*By the Court.*—Judgment affirmed.