(No. 28858.—

NAT M. KAHN, Appellant, *vs.* THE CONTINENTAL CAS-
UALTY COMPANY, Appellee.

*Opinion filed September 19, 1945—Rehearing denied Nov. 19, 1945.*

NAT M. KAHN, of Chicago, *pro se.*

TAYLOR, MILLER, BUSCH & BOYDEN, (JAMES J. MAG-NER, of counsel,) both of Chicago, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal granted by the Appellate Court for the First District, in accordance with section 75(2)(a), of the Civil Practice Act. (Ill. Rev. Stat. 1943, chap. 110, par. 199.) The cause is a suit in equity brought by Nat M. Kahn, as plaintiff, against The Continental Casualty Company, as defendant. In this opinion the parties will be referred to as plaintiff and defendant, respectively.

The purpose of the suit was to obtain a decree compelling the defendant to reinstate a noncancellable health and accident policy of insurance issued by the defendant to the plaintiff. The policy was dated and issued on May 15, 1923, and was effective for one year from that date. It provided for the payment of a premium of $172, for the first year, which was paid. By its terms, the policy could thereafter be renewed for like periods of one year upon the payment of a like premium on or before the anniversary date of the policy, or within thirty-one days thereafter. In the event death resulted from accident within one hundred and twenty days from the occurrence, the policy provided for the payment of $10,000 to the bene-

ficiary named therein. It further provided for accident and health disability payments up to $400 per month, commencing on the date of the disability, and continuing during the life of the insured. By its terms, the policy could not be cancelled by the defendant. It is conceded that similar noncancellable health and accident policies cannot be now obtained. The issuance of such policies was discontinued by all companies several years ago.

The facts are not in dispute. Plaintiff paid the premium on the policy for each year until the year 1941. As provided in the policy, a premium in the amount of $172, for the extension thereof for one year from the anniversary date of the policy, which was May 15, 1941, was due on that date, or within the thirty-one-day grace period thereafter, which expired on June 15, 1941. Plaintiff was notified sometime in April or May of the due date of this premium. However, he overlooked the payment of the premium. June 15, the last day of the grace period, fell on Sunday. On Monday, June 16, he prepared a check payable to the defendant for the amount of the premium, which he had certified by the bank on which it was drawn. At 10 o'clock A. M. on June 17, he tendered this check to the defendant, which it refused to accept, claiming that the policy had lapsed for the nonpayment of the premium within the grace period.

Negotiations were then carried on between the parties over a period of several days relative to the payment of the premium and the reinstatement of the policy. In these negotiations the parties argued their respective positions. Plaintiff contended that the premium was, in fact, tendered within the thirty-one-day grace period or within ten hours after its expiration, and that the policy had not lapsed for the nonpayment of the premium. His position was that the last day of the grace period falling on Sunday, that period did not expire until the following day. On the other hand, the defendant contended that the policy had

lapsed and could only be reinstated in the manner provided in the policy. As a result of these negotiations, the defendant finally delivered to the plaintiff a blank application for the reinstatement of the policy. This blank, after being altered in several immaterial respects by plaintiff, was completed by him and delivered to the defendant. One of the questions in this application for reinstatement was, "What is the maximum indemnity payable to you, from all policies, in all companies, life, accident, and accident and health, at present owned or now being applied for?" In answer to this question, plaintiff set out a list of life and accident and health policies theretofore issued to him and then in force. From this answer it appeared that he then had policies, other than the one here involved, providing for monthly total disability payments aggregating $483.33 which, together with the $400 of monthly disability indemnity provided for in the policy in question, made the aggregate indemnities payable to him, in case of total disability caused by sickness or accidents, $883.33. This application further showed that plaintiff's earned income for the previous year was $7958.86. The record shows that the average annual earned income of the plaintiff over the period of eighteen years the policy had been in force, was $10,517.92.

After this application for reinstatement was delivered to the defendant, its chief underwriter on June 28, 1941, wrote a letter to plaintiff in which he stated:

"Your application lists approximately $883 of monthly disability indemnities, including our policy. Our company is willing to participate in up to $500 of monthly indemnity, or 50% of an applicant's net earned income, either or both. The $500 maximum limit must include our policy and all other policies carried, therefore, before going into the question of medical insurability, it will be necessary that this difference between earnings and indemnities be adjusted. You can handle it in one of two ways, either

by reducing or canceling other insurance policies, possibly those having temporary or limited benefits, or reducing our policy. When the question of indemnities is cleared up, we can then go into the physical insurability which, if satisfactory, will permit approving your policy for reinstatement."

Plaintiff refused to comply with the conditions stated in this letter. It is conceded that the plaintiff's failure to comply with the requirements set out in this letter is the sole ground upon which the defendant refused to reinstate the policy. It is also conceded that the plaintiff was in good health; that he was not engaged in a hazardous occupation; that he was engaged in the practice of law, which was his profession at the time the policy was issued; that he was a man of good reputation and high standing, and that no health or moral risk or hazard was involved. The record shows that no claim had ever been made for disability payments, by plaintiff, under the policy.

This suit was then filed for the purpose of compelling the defendant to reinstate the policy. Upon a hearing the superior court entered a decree in favor of the plaintiff. By the decree the court directed the defendant to reinstate the policy upon payment by the plaintiff of the amount of the unpaid premiums within ninety days from the date of the decree. From this decree an appeal was perfected by the defendant to the Appellate Court. That court reversed the decree and remanded the cause with directions to dismiss the complaint for want of equity. As already observed, the case is here on an appeal allowed by the Appellate Court on a certificate of importance.

The material provisions of the contract of the parties are found in the provisions attached to and made a part of the policy. By paragraph 22 of these provisions, it is provided:

"Until the Insured becomes sixty years of age, he shall have the right to renew this policy from year to year by the payment of premium as herein provided. All premiums

are due and payable on or before the anniversary date of this policy either at the General Office of the Company in the City of Chicago or to any authorized agent of the Company, but a grace of thirty-one days shall be granted for the payment of every premium after the first, during which time the insurance hereunder shall continue in force. * * * After any default in payment of premium, this policy may be reinstated as provided in standard provision number three at any time within six months from the date of such default on written application by the Insured to the General Office of the Company and the payment of the defaulted premium, provided the Insured shall submit with such application evidence of insurability satisfactory to the Company."

Standard provision number three, above referred to, is as follows: "If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Company or by any of its duly authorized agents shall reinstate the policy but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance."

Paragraph 24 provides: "Indemnity for disability will not be paid under this policy at a rate in excess of the average earnings of the Insured for the period of time that he has been actually employed during the two years immediately preceding the commencement of disability for which the Company is liable. All premium paid during said two years for that portion of the disability indemnity in excess of the amount thus determined will be returned upon request of the Insured."

To reverse the judgment of the Appellate Court, plaintiff makes three principal contentions, which are necessary to be considered by this court. He contends (1) that the policy did not lapse for the nonpayment of the premium; (2) that the course of conduct of the defendant over the

period of eighteen years during which the policy had been in force, made it inequitable and unconscionable for the defendant to forfeit the policy, under the facts shown; (3) that he had the contractual right under the policy to reinstate the same in its original form; that the conditions imposed by the defendant for such reinstatement were unauthorized by the contract, and amounted to the making of a new contract between the parties, by which the policy was materially modified and changed.

In support of plaintiff's contention that the policy had not lapsed, he offered evidence tending to show that it was the general custom prevailing in the city of Chicago for insurance companies to accept checks for premium payments which were mailed on the last day of the grace period, if the transmittal envelope was postmarked on that day, although such checks were not actually received by the companies until the following day. From this he argues that had he mailed the check for the premium on June 16, which he claims was the last day of the thirty-one-day grace period, it would not have reached the office of the company in Chicago before the hour on the following day when the check was tendered by messenger. It is pointed out that the check was, therefore, actually tendered to the defendant as early on the day following the expiration of the grace period as it would have been received had it been mailed on June 16.

This contention of plaintiff cannot be sustained. The policy, by clear and definite terms, provided for the payment of the premium on or before the anniversary date of the policy, which was May 15, or within thirty-one days thereafter. The evidence offered tending to show the custom prevailing with insurance companies generally was not sufficient to overcome this plain provision in the policy. Whether the grace period expired on Sunday, June 15, or on the following day, is, in this case, wholly immaterial. It is conceded by plaintiff that he did not pay or tender

the premium within thirty-one days after the anniversary date of the policy. The policy clearly provided that upon the failure to pay the premium within that time, the policy would lapse for the nonpayment of the premium. On the record in this case it is unnecessary for us to determine what the effect would have been if there had been proof that it was the general custom of the defendant to accept premiums after the expiration of the grace period, and that such custom had been followed by the defendant in its dealings with the plaintiff. There is no such proof in this record and our conclusion is that plaintiff did not have the right to require the defendant to accept the premium after the expiration of the grace period, under the plain terms of the policy. The contention that the check was tendered before any notice of the lapse of the policy was served on the plaintiff, is also without merit. By the contract it was provided that the policy would lapse if default was made in the payment of the premium. No notice was required.

His next contention is that the testimony shows that for the first thirteen years the policy was in force, the defendant sent out reminder notices during the grace period of the nonpayment of premiums; that this practice was abruptly and improperly discontinued in 1935; that in 1925, the defendant accepted the premium from the plaintiff three days after the expiration of the grace period; that in 1930, the grace period expired on Sunday, and that on the following day the defendant accepted the premium, which was after the expiration of the grace period; that in view of the fact that the policy had been in force for eighteen years and cannot now be replaced, it is inequitable to permit the defendant to lapse the policy because the premium was not tendered until a few hours late. In our opinion this testimony was wholly insufficient to excuse plaintiff from the payment of the premium within the time fixed by the policy. There is no provision contained

in the policy requiring the defendant to give reminder notices of defaults in the payment of the premium, during the grace period. Even though it had formerly given such notices over a period of years, it had the right at any time to discontinue such practice. The discontinuance, in 1935, of the practice of giving such notice was too remote to avail the plaintiff in this case. His second contention, therefore, cannot be sustained upon this record.

This brings us to plaintiff's third contention, which is the decisive question in the case. The policy provides, as already indicated, that after default in the payment of the annual premium, the policy may be reinstated at any time within six months from the date of such default, on written application by the insured, and payment of the defaulted premium, "provided the Insured shall submit with such application evidence of insurability satisfactory to the Company." Defendant contends that this phrase in the policy did not limit it in determining the question of plaintiff's insurability to a consideration of matters concerning plaintiff's physical health only, but included all subjects reasonably affecting his insurability; that it meant and included all hazards reasonably pertinent to the risk. Acting upon this interpretation of the meaning of the word "insurability," the sole ground upon which the defendant refused to reinstate the policy was, that at the time the application for reinstatement was made, he had in force other policies under which, together with the indemnities provided by the policy here involved, he would be entitled to receive monthly disability payments in excess of 50 per cent of his net earned income. From this it argues that plaintiff was overinsured; that this was pertinent to the risk, and that it had the right to refuse to reinstate the policy because of such overinsurance. The question, stated in its laconic simplicity, is, Did the defendant have the right to require, as a condition to the reinstatement of the policy, the reduction of monthly disability indemnities under all

policies carried by the plaintiff, to the maximum amount of $500, as demanded by it?

By the letter already referred to, in which these conditions were stated, the defendant required as a condition to the reinstatement of the policy that the plaintiff either cancel or reduce his other policies so that the monthly disability payments under those policies would not exceed $100, or that he agree to a reduction of the indemnity disability payments under the policy in question to a maximum of $16.67 per month. The effect of the reduction of indemnities under the policy, demanded by the defendant, would have been only a little short of an outright cancellation of the policy as issued. It would not, in any sense, have been a reinstatement of the policy. It was the interpolation into the policy of a provision limiting the total amount of insurance the plaintiff would be permitted to carry, when no such provision was contained in the policy when issued and as it existed at the time it lapsed for the nonpayment of the premium. It was an arbitrary demand that plaintiff either surrender valuable contractual rights under the policy, or meet a demand which would render the policy practically ineffective.

Defendant offered evidence tending to show that it was the usual and conventional rule of insurance companies not to issue noncancellable health and accident policies providing for disability indemnities in excess of fifty per cent to sixty per cent of the insured's net earned income. Under the rule it is insisted that plaintiff was only insurable to a maximum monthly indemnity, under all policies, of fifty per cent of his net earned income, averaged over the two preceding years. It may be noted that the testimony as to the existence of such rule shows that if such rule exists it was formulated and adopted after the policy here involved was issued. The record clearly shows that this rule was not observed at the time the policy was issued. By the policy, and by paragraph 24 of the conditions at-

tached to the policy, the defendant contracted to pay disability indemnities equal to 100 per cent of plaintiff's average earnings over the period of two years immediately preceding the disability, up to $400 per month.

The rule is definitely settled that the right to reinstate a policy after it has lapsed, given to the insured by the policy itself, is a valuable contractual property right which survives the lapse of the policy. Such right may be exercised within the time limited by the policy. In this policy the limitation was six months. This rule is conceded by the defendant. It contends, however, that in determining whether the plaintiff had submitted evidence of insurability it had the right to go into the question of the amount of health and accident insurance carried by him, and determine for itself whether plaintiff was overinsured.

In *Leonard* v. *Prudential Ins. Co.* 128 Wis. 348, 107 N. W. 646, it was said: "So the relations between the parties to the insurance contract when the assured made his application to revive the same were not, by any means, the same as those between an applicant for a policy in the first instance, and the company applied to, as appellant's counsel contend. In the latter, the application could be rejected at the pleasure of the company; the attitude of the applicant being that of one offering to take from another that which such other is not under any legal obligation to deliver. In the case in hand the attitude of applicant was that of one demanding a right which, upon the conditions precedent in the contract to its ripening into a complete obligation, it was not within the power of appellant to successfully withhold. * * * The company was entitled to be satisfied of the insurability of the applicant before restoring the policy, but it had no right, by proceedings outside of anything contemplated by the contract, to create dissatisfaction. When in all reason it ought to have been satisfied or to have notified the assured to furnish further evidence, it was bound to be satisfied or to so notify him.

\* \* \* The array of authorities pressed upon our attention by counsel for appellant, dealing with original application for insurance, are doubtless right as regards the facts with which they deal, but they are entirely unsuitable as guides in reaching a proper decision in this case. Here there was a contract of insurance in part, as has been said when the application for revival was made. It had been paid for, and as to the right of restoration it was in full force when the assured's case in that regard was submitted for consideration."

In *Officer* v. *New York Life Ins. Co.* 73 Colo. 495, 216 Pac. 252, the court said: "That the rights of an insured making an application for reinstatement of a lapsed policy, are widely different from the rights of those making an original application for insurance, must be conceded, and this principle is so plain as to need neither elaboration nor citation of authorities."

The right of reinstatement being a contractual right, arising under the original policy, such right is controlled solely by the terms of the policy. Nothing can be added to those terms as a condition to the reinstatement of the policy. Any added or additional provision or condition is without consideration and is void for want of consideration. (*Missouri State Life Ins. Co.* v. *Hearne,* 226 S. W. 789.) In *Froehler* v. *North American Life Ins. Co.* 374 Ill. 17, we said: "In the case which we are now considering the insured had a contractual right to be reinstated and this provision of his policy was as valid and binding as any other provision therein. Under such a policy as this one the lapse for nonpayment of premiums does not make necessary the formation of a new contract, but the reinstatement, when effected, merely cancels the forfeiture, leaving the original contract in full force. (*Monahan* v. *Fidelity Mutual Life Ins. Co.* 242 Ill. 488; 4 Cooley on Insurance, (2d ed.) p. 3800.)"

In *Kennedy* v. *Occidental Life Ins. Co.* 18 Cal 2d 627, 117 Pac. 2d 3, it was said: "The right to revive the policy by reinstatement is a valuable contractual right, the consideration for which is found in the premiums paid and to be paid under the original policy, and the insurer has no arbitrary or discretionary right to refuse reinstatement if all the conditions therefor have been complied with. * * * The insured had a contractual right to be reinstated under the terms of his policy and any agreement to impose different terms is unsupported by consideration."

The reinstatement clause of the policy here in question provided that the policy, if defaulted for the nonpayment of the premium, might be reinstated upon the payment of the defaulted premium and the submission by the insured of "evidence of insurability satisfactory to the company." These are the only applicable provisions of the policy which could be considered upon an application for the reinstatement of the policy. No other conditions are imposed by the contract written in the policy. The plaintiff had an absolute contractual right to have the policy reinstated by doing two things, *viz.*: (1) payment of the defaulted premium, and, (2) submitting evidence of insurability satisfactory to the company. This is not a new provision. The same language was used in paragraph (9) of section 1 of the Insurance Act of 1907. (Laws of 1907, p. 369.) It was in use in insurance policies prior to that time. *Leonard* v. *Prudential Ins. Co.* 128 Wis. 348, 107 N. W. 646; *Officer* v. *N. Y. Life Ins. Co.* 73 Colo. 495, 216 Pac. 253; *Thompson* v. *Postal Life Ins. Co.* 226 N. Y. 363, 123 N. E. 750; *Prudential Ins. Co.* v. *Union Trust Co.* 56 Ind. App. 418, 105 N. E. 505.

The phrase, "satisfactory to the company" has been considered in many cases. Perhaps the best statement of the effect and meaning of the words "satisfactory to the company" is found in the opinion of Judge Cardozo in

*Thompson* v. *Postal Life Ins. Co.* 226 N. Y. 363, 123 N. E. 750. It was there said: "It is no answer to say that the evidence of his condition was not satisfactory to the insurer. The agreement did not contemplate the exercise of the insurer's taste or fancy or caprice. *Crawford* v. *Mail & Ex. Pub. Co.,* 163 N. Y. 404, 57 N. E. 616. 'It could not be unsatisfied with the certificate, capriciously. That which the law will say a contracting party ought in reason to be satisfied with that the law will say he is satisfied with.' *Miesell* v. *Globe Mut. Life. Ins. Co.* 76 N. Y. 115, 119. In the case cited we applied that principle to a very similar situation. There are other cases to the same effect. *Dennis* v. *Mass. Benefit Ass'n.,* 120 N. Y. 496, 503, 24 N. E. 843, 9 L. R. A. 189, 17 Am. St. Rep. 660; *Knights Templars' Life Indemnity Co.* v. *Jacobus,* 80 Fed. 205, 25 C. C. A. 378; *Leonard* v. *Prudential Ins. Co.,* 128 Wis. 348; 107 N. W. 646, 116 Am. St. Rep. 50. This insurer had agreed to reinstate and waive if satisfactory evidence of insurability was supplied. Evidence that ought to have satisfied was supplied, and thereupon without further act of the insured or the insurer, the policy was revived. *Miesell* v. *Globe Mut. Life Ins. Co., supra; Dennis* v. *Mass. Ben. Ass'n., supra; Reed* v. *Provident Savings Life Assur. Soc.,* 190 N. Y. 111, 120, 82 N. E. 734; *Knights Templars' Life Ins. Co.* v. *Jacobus,* 80 Fed. 202, 25 C. C. A. 378."

This brings us to the contentions as to the meaning of the word "insurability," as used in the policy. It is to this question that most of the arguments are devoted. Frankly we must observe that counsel in the briefs on both sides, as well as the arguments at bar, have drifted far afield from the decisive question in the case, as we view it. Assuming, without deciding, that defendant's position that on the application for reinstatement it had the right, in determining the question of plaintiff's insurability, to consider elements other than the condition of his health, is sound, we do not

see how this presents any decisive or controlling question in the case. On this record that question is purely academic. Defendant did not reject the application for reinstatement of the policy on the ground that it determined the question of plaintiff's insurability adversely to him. According to the defendant's own definition of the word "insurability," it means, "quality or condition of being insurable." "Insurable" means "capable of being insured; proper to be insured." For the purposes of this case, we may accept those definitions. The word "insurability" does not mean "desirability." (*Missouri State Life Ins. Co.* v. *Hearne*, 226 S. W. 789.) Referring to an individual, it means that he is a proper subject for insurance.

Turning to the letter of defendant's chief underwriter, in which the grounds for the rejection of the application for reinstatement were stated, we find that no claim was made by the defendant that plaintiff had not submitted satisfactory evidence of his insurability. On the contrary, it accepted and treated the plaintiff at all times as insurable within the meaning of that term, as used in the policy. It definitely agreed that he was insurable for the full amount of the indemnities provided in the policy. The difference between the parties related only to the amount of indemnities the plaintiff would be permitted to carry in other companies. This was wholly foreign to any question arising on the application for reinstatement. Having definitely determined that he was insurable, the defendant cannot now claim that he was not. Admitting his insurability the defendant was merely quibbling as to the amount of insurance the plaintiff would be permitted to carry with other companies. It offered to reinstate the policy upon condition that the plaintiff either cancel or reduce his insurance in other companies so that the total indemnities he would be entitled to receive from such other companies, in case of total disability, would not exceed the sum of $100 per month. In the alternative, it demanded that he con-

sent to a reduction in the indemnities payable under defendant's policy, in case of total disability, to $16.67 per month. Common sense dictates that the defendant would not expect any insured in the possession of his faculties to accept this alternative proposition. It could only have been made with the expectation and the hope that it would not be accepted in order that the defendant might use such refusal as a basis for declining to reinstate the policy. Had plaintiff complied with the request of the defendant to cancel or reduce the indemnities under his other policies, it expressed a willingness to reinstate the policy here involved for the full amount of indemnities provided in the policy as originally issued. It thus determined that plaintiff was insurable for the full amount and upon all the terms of the policy as issued.

The defendant, therefore, having favorably determined the question of plaintiff's insurability, he was entitled to have the policy reinstated and the question of his insurability is not here involved. While the arguments here on both sides have been largely directed to the question of the meaning of the term "insurability," the defendant by the letter of its chief underwriter, entirely eliminated that question from the case. The defendant, after having favorably determined the question of plaintiff's insurability, attempted to impose a restriction on the amount of other insurance which he might carry, as a condition to the reinstatement of the policy.

The right to reinstate the policy was a contractual right, based upon the policy, and survived its lapsation. The policy contained no restrictions or limitations on the amount of indemnities or disability payments to be carried or thereafter contracted for by the plaintiff from other companies, either as a condition to defendant's liability under the policy or to the reinstatement of the policy. Other insurance indemnities were not prohibited or limited by the policy.

If the defendant desired to reserve the right to reinstate the policy after lapsation only if it determined that the plaintiff was not then overinsured, it would have been an easy matter to have inserted such provision in the policy. It had the right to include any provision in the policy not in violation of law or contrary to the public policy. It issued the policy with no pro-rata-of-payment clause and no restrictions on the right of the plaintiff to carry other insurance or to purchase contracts for disability indemnities from other companies. Obviously, the absence of any such restrictions was one of the attractive features and selling points of the policy. The conclusion is inescapable that such restrictions were deliberately and purposely omitted in order that such policies could be sold as noncancellable, unrestricted health and accident insurance, which they purported to be. Instead of inserting a provision denying or limiting the right to carry insurance in other companies, the defendant carefully limited its liability, by paragraph 24 of the provisions of the policy, to plaintiff's average earnings during the two-year period preceding the disability.

In the absence of such restrictive provisions in the policy, it was no concern of the defendant what other policies were carried by the plaintiff or the amount of disability indemnities payable to him under such policies. When the defendant issued the policy, it inserted no provisions in the contract limiting the amount of other insurance which might be carried by the insured thereafter. Its liability under the contract was definitely fixed and limited by paragraph 24 of the conditions attached to and made a part of the policy. Such liability was in nowise affected by the fact that plaintiff might thereafter acquire or carry other insurance or by the amount of such other insurance. The question of whether he should at some future time become overinsured, in the absence of any restrictions in the policy, was a matter wholly between the plaintiff and

the companies issuing the policies by which such alleged overinsurance was brought about. It in no way affected or changed the liability of the defendant under its policy.

The attempt of the defendant to impose, as a condition to the reinstatement of the policy, a limitation on the amount of insurance which the plaintiff could carry, or the amount of indemnity payments for which he might contract with other companies, was an effort on its part to avoid the plain terms of the contract which, as shown by the record, its experience with other like policies had proved to be unprofitable. A contract fairly entered into for an adequate consideration cannot be avoided or disregarded by one of the parties to it because he finds that the contract is less profitable to him than he anticipated when he entered into it. The option given the plaintiff to reinstate the policy was based on the consideration of the contract and the payment of premiums thereunder. It was something more than the right to negotiate and enter into a new contract with the defendant in such form and upon such terms as it might dictate. "To reinstate" means "to instate again; to place the policy in the position it was in before default was made in the payment of the premium." It implies the right of the insured to be placed in the same condition that he occupied before the forfeiture, and it implies the duty on the part of the insurer to place the insured in that condition. It allows no right to exact other conditions, precedent or subsequent to reinstatement. (*Mutual Life Ins. Co.* v. *Lovejoy,* 203 Ala. 452, 83 S. 591.) To the same effect are *N. Y. Life Ins. Co.* v. *Buckberg,* 249 Mich. 317, 228 N. W. 770, and *Missouri State Life Ins. Co.* v. *Jensen,* 139 Okla. 130, 281 Pac. 561.

Under the contract of insurance plaintiff had the right to reinstate the policy by the payment of the defaulted premium and presenting to the defendant evidence of his insurability. He tendered such premium and furnished such evidence. The defendant conceded his insurability

by offering to reinstate the policy in its original form on condition that he would cancel or reduce his other insurance. He had the right to have the policy reinstated with no restrictions or limitations except those contained in the policy as originally issued. The action of the defendant in attempting to impose conditions not contained in the policy was beyond the terms and in violation of the contract. The Appellate Court erred in reversing the decree of the trial court.

The judgment of the Appellate Court is reversed and the decree of the superior court is affirmed.

*Appellate Court reversed; superior court affirmed.*